RUTH SEMMENS *et al.*, Indiv. and as representatives of a class of teachers employed at Central Elementary School, Lincoln Elementary School and Washington Elementary School, Plaintiffs-Appellants, v. BOARD OF EDUCATION OF PONTIAC COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 429, LIVINGSTON COUNTY, Defendant-Appellee.

Fourth District   No. 4—89—0284

Opinion filed October 31, 1989.

Ralph H. Loewenstein, of Deffenbaugh, Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellants.

Allen D. Schwartz and Timothy A. Bridge, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

At all times pertinent in this case, section 24—9 of the School Code has stated:

> "Teachers duty free lunch period. Every teacher in any school house where 2 or more teachers are employed whose duties require attendance at the school for 4 or more clock hours in any school day shall be entitled to and be allowed a duty free lunch period equal to the regular local school lunch period but not less than 30 minutes in each school day." Ill. Rev. Stat. 1985, ch. 122, par. 24—9.

On October 6, 1987, plaintiffs Ruth Semmens, Dee Raube, and Peg Melvin filed suit in the circuit court of Livingston County against defendant, Board of Education of Pontiac Community Consolidated School District No. 429, Livingston County, Illinois (District). Plaintiffs alleged they were teachers employed by the District and meeting the requirements of section 24—9. They maintained the District had not afforded them the lunch period required by section 24—9 and requested injunctive relief requiring compliance by the District and damages for the period they had served while section 24—9 was being violated.

Plaintiffs' complaint also alleged they represented a class of teachers employed in several schools of the District whose statutory rights in regard to a lunch period were also being violated. Subsequently, the parties stipulated a class action was appropriate and the court certified a class. At the same time, Dee Raube and Peg Melvin were dismissed as plaintiffs and replaced by Marjorie Legner and Sharon Baremore. On October 7, 1988, pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), the District filed a motion to dismiss upon the basis that under the terms of the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*), the circuit court had no jurisdiction of the case as the matter should be decided by the Illinois Educational Labor Relations Board (IELRB). The motion was supported by various documents but neither the motion nor any of the documents were verified.

On October 17, 1988, plaintiffs filed an "Opposition to Motion to Dismiss." That document noted that defendant's motion was made pursuant to section 2—619(a)(1) of the Code of Civil Procedure, which provides for dismissals of complaints for lack of subject-matter juris-

diction and requires that "[i]f the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit." (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a).) The document contended the complaint did not set forth facts on its face which showed an exclusive jurisdiction in IELRB. The document further asserted that even if all of the allegations of the District's motion and supporting material were considered, exclusive jurisdiction in the IELRB would not be shown. A hearing on the motion to dismiss was heard and, on March 10, 1989, the circuit court entered an order dismissing the complaint. Plaintiffs have appealed. We reverse and remand to the circuit court.

For reasons we will explain, we hold exclusive jurisdiction of the dispute involved here was not shown on the face of the complaint to reside in IELRB. That reason alone would require us to reverse and remand. However, we also hold that even if the District's unverified motion and supporting material were verified, the District would still have failed to make a showing that exclusive jurisdiction was vested in IELRB.

The parties do not dispute that plaintiffs' complaint shows them to be "educational employees" (Ill. Rev. Stat. 1987, ch. 48, par. 1702(b)) and the District to be an "educational employer" (Ill. Rev. Stat. 1987, ch. 48, par. 1702(a)) all within the meaning of the Act. The motion to dismiss alleged Pontiac Education Association—429 IEA/NEA (Association) is plaintiff's exclusive bargaining representative, and the District and the Association entered into a collective-bargaining agreement for the 1986-88 period which contains a procedure for filing grievances and taking a matter through arbitration. Section 11.1(a) of that article specifically defines a "grievance" as "any claim by the Association or an employee that there has been a violation, misinterpretation or misapplication of the *terms of this Agreement*." (Emphasis added.) The agreement contains a section entitled "Lunch Period—Certified" but leaves that section entirely blank except for the heading. The contract further contains a "zipper clause" which states the terms and conditions of the agreement represented the full and complete understanding of the parties.

The District's motion to dismiss made the further following allegation. The District and the Association executed a "side letter" in which the parties agreed to form a committee to discuss the current school lunch and recess program. The committee met but failed to reach an agreement. The District notified the Association of its intent to implement a policy of giving teachers a 30-minute, duty-free lunch period followed by a period of duties during the remainder of the

school lunch-recess period. A letter attached to the motion indicated the District informed the Association it could "make a request for impact bargaining over the proposed change." The documents supporting the District's motion indicated that, previously, some teachers undertook supervisory responsibilities during the final 15 minutes of a lunch period but were not required to do so and others had the full 45 minutes free.

Another letter attached to the motion to dismiss showed the Association demanded an opportunity to bargain about the new policy. However, according to the District's motion, the Association failed to negotiate further. The attorney for the Association wrote the District of his intent to take legal action to protect the teachers' rights if they were not given a 45-minute, duty-free lunch period. A copy of that letter is also attached to the District's motion.

■ When a matter can be decided by an administrative agency, courts are generally required to defer to the appropriate agency. (*Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 493 N.E.2d 1045, *cert. denied* (1986), 479 U.S. 949, 93 L. Ed. 2d 384, 107 S. Ct. 434.) The purpose of this rule is to enable matters which require specialized or technical expertise to be decided by a tribunal possessing those qualities. (*Kellerman*, 112 Ill. 2d at 444, 493 N.E.2d at 1052; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) Here, papers filed in support of the District's motion to dismiss indicate the District contends the pupils in the schools involved do not actually have a 45-minute lunch period but have a 30-minute lunch period followed by a 15-minute supervised recess. Thus, making the ultimate decision in the case could well require some knowledge of school practices.

■ The District points out that the stated purpose of the Act is to "regulate labor relations between educational employers and educational employees" and to resolve "disputes arising under collective bargaining agreements." (Ill. Rev. Stat. 1985, ch. 48, par. 1701.) The District also relies on *Board of Education of Community School District No. 1 v. Compton* (1988), 123 Ill. 2d 216, 526 N.E.2d 149, and *Board of Education, Benton Consolidated School District No. 47 v. Benton Federation of Teachers, Local No. 1956, IFT/AFT* (1988), 165 Ill. App. 3d 514, 518 N.E.2d 1257, where courts have implied broad powers in the IELRB which are not expressly stated in the Act. In *Compton*, the supreme court held that the stated purpose of the Act and the need to avoid confusion as to the appropriate tribunal for disputes over arbitration proceedings required a construction of the Act which deprived courts of their common law power to determine the

arbitrability of disputes arising under collective-bargaining agreements between educational employers and employees. That court held the appropriate procedure for a party forced to arbitration on an issue it deemed inarbitrable was to await the award and then, if dissatisfied, defy the award giving rise to a charge of an unfair labor practice under section 15 of the Act.

We conclude the broad reach of the Act does not cover the instant dispute. The District, realizing the problems arising by the lack of verification in regard to its motion to dismiss, maintains the face of the complaint shows a dispute over which only IELRB has jurisdiction. The complaint merely alleges the existence of an educational employer and educational employees and the failure of the employer to comply with section 24—9 of the School Code. No mention is made of a collective-bargaining agreement requiring arbitration or providing for a grievance procedure.

■ The sole remedy given by the Act to employees, where no collective-bargaining agreement is shown to be in force, is to seek a determination under section 15 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1715) that the employer has commited an unfair labor practice. Thus, the issue we must first decide is whether any educational employee has an action for an unfair labor practice if his or her employer is violating a right concerning a working condition which arises from another statute.

■ Section 14(a) of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)) lists the various kinds of conduct by an educational employer which constitute an unfair labor practice. Section 14(a)(1) of the Act makes "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act" by an employer an unfair labor practice. (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(1).) Here, the only rights set forth on the face of the complaint are those that of the plaintiffs under section 24—9 of the School Code. Thus, that provision is not applicable. Other unfair labor practices described in section 14(a) of the Act concern formation of unions, elections, hiring or firing, refusing to bargain, or failure to comply with a binding arbitration award. None of those matters are involved here. Accordingly, we hold that the matters alleged on the face of the complaint did not justify the dismissal of the complaint. This reason, alone, is sufficient to require us to reverse the judgment of dismissal and remand to the circuit court.

We recognize that to decide this case merely upon the basis of the lack of verification is likely to result in this case returning to us with a similar judgment after the District supplies sufficient verification to

the motion to dismiss and supporting documents. Although the record presents more difficult problems if we consider the unverified matter presented by the District, we deem it desirable for us to do so because we conclude that even if that information were properly before us, we would rule that the circuit court complaint should not have been dismissed.

■ In ruling that the plaintiffs had a remedy under the Act, the circuit court keyed upon the fact indicated in the unverified material, that the District had made an alteration in the lunch period for teachers which changed the amount of the free time from 45 minutes to 30 minutes. This allegedly made their free time less than that of the pupils and violated section 24—9 of the School Code. The court then considered section 10(b) of the Act, which prohibits parties to a collective-bargaining agreement providing or implementing a provision in a collective-bargaining agreement if "that provision would be in violation of *** any statute" of the State. (Ill. Rev. Stat. 1987, ch. 48, par. 1710(b).) The circuit court's order then noted that the IELRB has held that action of an employer implementing a contract provision which conflicts with or diminishes employee rights under a statute is a violation of a right under section 10(b) of the Act and, therefore, interferes with rights guaranteed under the Act resulting in an unfair labor practice pursuant to section 14(a)(1) of the Act. (*Chicago Board of Education*, 3 Pub. Employee Rep. (Ill.) par. 1085, case No. 86—CA—0069 (Illinois Educational Labor Relations Board, June 24, 1987).) The circuit court then concluded its order by stating:

> "If it is an unfair labor practice for an employer to violate a state law in implementing a term of a collective bargaining agreement, it is also an unfair labor practice for an employer to unilaterally implement a working condition not covered by the collective bargaining agreement when that condition is a violation of state law."

Assuming *arguendo* the propriety of *Chicago Board of Education*, we cannot agree to the analogy drawn by the trial court. Section 14(a)(1) of the Act concerns *violations of the Act*. Section 10(b) of the Act concerns implementation of collective-bargaining agreements. A violation of section 10(b) occurs when a *collective-bargaining agreement is implemented* in violation of other statutes. The theory that such a violation gives rise to an unfair labor practice under section 14(a)(1) of the Act is based on the theory that the section 10(b) violation is a violation of a right created under the Act, thus triggering application of section 14(a)(1). The implementation of a working condition not covered by a collective-bargaining agreement does not bring

section 10(b) of the Act into play and thus does not create a "right guaranteed under [the] Act" within the meaning of section 14(a)(1) of the Act.

We have an additional concern about a characterization of plaintiffs' claim as one for an implementation of a working condition or a modification of a prior working condition even if the evidence would prove such an implementation or such a modification took place, and either constituted an unfair labor practice under section 14(a)(1). Plaintiff brought an action for a statutory violation which would be easier to prove than would either of the former types of supposed misconduct upon the part of the District. Moreover, section 15 of the Act states that the IELRB may not issue any order on a charge which was filed more than six months after the occurrence of the unfair labor practice. (Ill. Rev. Stat. 1987, ch. 48, par. 1715.) Here, the statutory violation would appear to be a continuing one and, if any limitation period is applicable as to part of the relief requested, that period would appear to be the five-year period of section 13—205 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) The action which plaintiffs sought to bring differs materially from the action which the District maintains can only be brought as an unfair labor practice.

■■ Even after considering all of the unverified material, no indication is given that plaintiffs should have grieved the issue upon which they complain or requested the Association to submit it to arbitration, because the question of a free lunch period was not covered by the collective-bargaining agreement. No question of improper refusal to bargain was possible, because no collective-bargaining agreement could provide for a lunch period violating section 24—9 of the School Code.

For the reasons stated we hold that the circuit court had jurisdiction to proceed with plaintiffs' complaint even if the unverified information presented by the District were properly before the court. We reverse the judgment of dismissal and remand to the circuit court of Livingston County for further proceedings.

Reversed and remanded.

KNECHT and SPITZ, JJ., concur.