No. 1-10-0631

SECOND DIVISION
JANUARY 11, 2011

AMALGAMATED TRANSIT WORKER'S )
UNION, LOCAL 241, ) Appeal from the
) Circuit Court of
      Plaintiff-Appellant, ) Cook County
)
      v. ) No. 09 CH 29105
)
PACE SUBURBAN BUS DIVISION of the ) Honorable
REGIONAL TRANSPORTATION AUTHORITY, ) Daniel Riley,
PACE WEST DIVISION, ) Judge Presiding.
)
      Defendant-Appellee. )

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Cunningham and Justice Karnezis concur in the judgment and opinion.

## OPINION

Plaintiff Amalgamated Transit Worker's Union, Local 241, filed a complaint in the circuit court of Cook County against defendant Pace Suburban Bus Division, seeking a declaratory judgment and an injunction. Plaintiff alleged that defendant unlawfully imposed suspensions and fines on plaintiff's members when buses that they operated were photographed running red traffic lights. The circuit court granted defendant's motion to dismiss the complaint under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)), finding that a collective bargaining agreement, which contained a grievance and arbitration process, governed the dispute between the parties. We affirm.

BACKGROUND

Our recitation of the facts of this case is drawn from plaintiff's complaint, which we take as true when reviewing a motion to dismiss under section 2-619 of the Code of Civil Procedure

1

No. 1-10-0631

(735 ILCS 5/2-619 (West 2008)). See *Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153, 158-59 (1999).

Defendant is a division of the Regional Transportation Authority, which provides public transportation in the Chicago area. Among other duties, defendant operates buses on routes throughout western Cook County. Plaintiff is a labor organization that is composed of and represents the collective interests of defendant's employees, including bus drivers.

Beginning in 2006, municipalities in western Cook County began installing "red light cameras" at intersections in their jurisdictions. Red light cameras work by automatically taking photographs of any vehicle that enters an intersection while the traffic signal in that direction is red. See 625 ILCS 5/11-208.6 (West 2008). Under authority granted to them by the Illinois Vehicle Code (625 ILCS 5/11-208.3(a) (West 2008)), these municipalities also created a system of administrative adjudication for violations of automated traffic laws (625 ILCS 5/11-208.6 (West 2008)). By statute, when red light cameras capture a violation, the municipality is required to mail written notice of the violation to the registered owner of the vehicle. See 625 ILCS 5/11-208.6(d) (West 2008). The notice must include copies of the photographs taken of the vehicle by the red light camera, as well as other information such as the date, time, and location of the alleged violation. See 625 ILCS 5/11-208.6(d)(1) through (10) (West 2008). Registered owners may choose to pay the civil fine for the violation, or they may contest the violation at an administrative hearing. See 625 ILCS 5/11-208.6(d)(10) (West 2008). The only statutory defenses available to the registered owner at the hearing are either that the vehicle or its plates were reported as stolen before the alleged violation, or that the driver of the vehicle entered the intersection in order to yield to an emergency vehicle or as part of a funeral

2

procession. See 625 ILCS 5/11-208.6(h) (West 2008). There are no provisions in the statute that anyone other than the registered owner of a vehicle is legally responsible for payment of a fine assessed under section 11-208.6.

This case arose when defendant began receiving traffic tickets for violations of section 11-208.6. Defendant learned from these notices that buses that it owned and operated had allegedly run red lights at intersections with red light cameras. According to the complaint, defendant began "effectively reassigning" these traffic tickets to the bus drivers who had been operating the vehicle at the time of the alleged violation. Under defendant's alleged policy, defendant requires the bus driver to pay the fine and suspends the driver for between one and five days, with the possibility of termination of employment for three or more violations. The complaint alleges that defendant does not provide either the driver or plaintiff with a copy of the ticket or photographs of the alleged violation in a timely manner, which prevents the driver from contesting the charge.

The complaint asserted that defendant's policy is illegal because, according to the Vehicle Code, only the registered owner of the vehicle is legally obligated to pay the fine, not the driver at the time of the alleged violation. Plaintiff sought a declaratory judgment that defendant's practice of "reassigning" the traffic ticket to its employees is not justified by Illinois law and is *ultra vires*. Plaintiff further sought an injunction that would require defendant to give timely notice of any alleged violation of section 11-208.6 and would prohibit defendant from requiring its drivers to pay fines associated with the alleged violations.

Defendant moved to dismiss the complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 2-619(a)(9) (West 2008)). In its motion, defendant argued that the parties

had entered into a collective bargaining agreement (CBA), which contained a binding grievance and arbitration procedure for any disputes that arise under the CBA. Defendant contended that, although plaintiff framed its allegations in terms of unlawful "reassignment" of traffic tickets, plaintiff's complaint was in reality directed at the manner in which defendant disciplined its employees for on-the-job traffic violations. Defendant attached to its motion the four pages of the CBA that deal with the grievance process, as well as a clause that states, "[Plaintiff] agrees that it will not in any way interfere with or attempt to limit the right of [defendant] to discharge or discipline its employees for any reason where sufficient cause can be shown." Defendant argued that, because the CBA deals with the specific issue that is in dispute, plaintiff must exhaust its contractual remedies under the CBA before bringing an action in the circuit court.

After full briefing by the parties, the circuit court heard oral argument on January 21, 2010. The circuit court rejected plaintiff's arguments and agreed with defendant, stating "I don't find [defendant's] action here to be contradictory or in violation of the law. [Defendant] is acknowledging for purposes of the motion that they have a legal obligation to pay [the tickets]. I *** find that it is in fact a grievance related to the performance of the job duties and that the matter should be arbitrated under the terms of the collective bargaining agreement." The circuit court granted defendant's motion to dismiss with prejudice, and plaintiff filed a timely notice of appeal.

ANALYSIS

On appeal, plaintiff argues that the CBA does not cover the defendant's actions and that this matter is therefore not required to go through the grievance and arbitration process spelled out in the CBA. Defendant counters that the trial court properly dismissed the complaint

4

No. 1-10-0631

because defendant's policy is related to the discipline of its employees, which is covered by the CBA.

We review an order of dismissal under section 2-619(a)(9) of the Code of Civil Procedure *de novo*, accepting as true all well-pled facts contained in the complaint and in any uncontradicted affidavits attached to the motion. See *Coady v. Harpo, Inc.*, 308 Ill. App. 3d 153, 158-59 (1999). The question on review is " ' whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' " *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 110 (1999), quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

Neither party disputes the facts as they are laid out in the complaint, and neither party denies that the portion of the CBA that we have in the record is accurate and is binding upon the parties. Ordinarily, if a collective bargaining agreement exists and it contains a grievance and arbitration procedure, "an employee alleging a violation of the agreement must attempt to exhaust his or her contractual remedies before seeking judicial relief." *Kostecki v. Dominick's Finer Foods, Inc.*, *of Illinois*, 361 Ill. App. 3d 362, 369 (2005). However, only "grievances" are subject to arbitration, and any claims that are not covered by the agreement may be pursued in the circuit court. See *id*. at 369-70. Consequently, the only question that we must decide on appeal is whether defendant's policy of suspending drivers accused of red light camera violations and requiring them to pay the fines is a grievance within the meaning of the CBA.

We initially note that the portion of the CBA in the record does not contain a definition of the term "grievance." However, "[e]ngrafted on every written contract are the customs, practices and definitions which are commonly understood and accepted by the parties." *Colgan*

5

*v. Rae-Ann Electric Co.*, 91 Ill. App. 3d 386, 390 (1980). Our supreme court has noted that a grievance is generally understood to mean "any complaint by an employee concerning any aspect of the employment relationship." *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 530 (1990), quoting Roberts' Dictionary of Industrial Relations 170-71 (1971). Because the employment relationship between the parties here is governed by the CBA, we take the term grievance to mean any dispute over the rights and obligations of the parties as they are defined by the CBA.

Our first task is to determine the nature of the actions at issue. Plaintiff complains of three aspects of defendant's policy: (1) suspending and possibly terminating drivers for alleged red light camera violations, (2) failing to give drivers sufficient notice of the allegations against them, and (3) requiring drivers to pay the fines for the red light camera violations. We find that the first portion of the policy is properly characterized as a disciplinary issue. The complaint itself alleges that defendant "*disciplines* Bus Operators [who are] reassigned red light tickets or citations *by suspending them*." (Emphasis added.) Disciplinary actions are explicitly addressed in the CBA, in which plaintiff agreed not to interfere with defendant's right to discipline or discharge its employees. Because suspension is a disciplinary matter and is therefore within the scope of the CBA, any dispute over this issue must be submitted through the CBA's grievance process.

The second portion of the policy is also related to employee discipline. The complaint asserts that "Bus Operators have a right to timely notice of any traffic violations that they are alleged to have committed. [Defendant's] practice, policy or custom *** deprives Bus Operators of the timely notice required. *** [Defendant's] illegal practice, policy or custom has resulted

in Bus Operators incurring and paying *unjustified* and increased fines and penalties as well as suspensions and other discipline." (Emphasis added.) As noted above, defendant has a right to discipline its employees. However, the CBA explicitly limits defendant's right only to situations where "sufficient cause can be shown." The plain meaning of plaintiff's allegation is that, by not providing sufficient notice of the alleged traffic violation to an employee, defendant has failed to demonstrate sufficient justification for imposing discipline on that employee. A dispute between the parties over whether defendant is disciplining its employees without sufficient cause is an issue that is explicitly covered by the CBA, and consequently it must also be addressed through the CBA's grievance process.

The third portion of the policy is more difficult to characterize. Plaintiff argues that defendant is the only entity that is legally obligated to pay red light camera citations and that its practice of "reassigning" the ticket to its bus drivers and forcing the bus driver to pay the ticket is illegal and *ultra vires*. "An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee. An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction." 6 Am. Jur. 2d *Assignments* §1 (West 2008). Common law and statutory rights are generally assignable, absent a clear statute or public policy to the contrary. See 6 Am. Jur. 2d *Assignments* §7 (West 2008). Plaintiff characterizes defendant's policy of requiring bus driver's to pay the red light ticker as an "assignment," and it sought a judicial declaration that such an assignment is void as against public policy.

However, we find that defendant's policy is not an assignment. Even assuming, without

7

deciding, that a red light camera citation is assignable, there is no indication in the complaint that an assignment has occurred in this case. Plaintiff does not indicate that there is any contract of assignment between defendant and the bus drivers who are accused of running red lights, and without such an agreement there can be no assignment. Indeed, the complaint does not allege that an assignment occurred at all. Instead, the complaint merely alleges that defendant is "*effectively* reassigning" (emphasis added) the citations, indicating that no assignment in the legal sense has occurred.

Moreover, the bus drivers themselves do not appear to actually pay the fine to municipalities. If an assignment of a red light camera citation had occurred, then the bus driver would be obligated to pay the fine directly to the municipality. That does not appear to be the case here. Rather, it seems that defendant pays the fine, and then defendant requires bus drivers to reimburse it for the amount paid to the municipality. The complaint specifically alleges that defendant has "demanded that the employee Bus Operators pay for the red light tickets or citations" and that defendant "has in fact *collected payments from* Bus Operators after demanding that they pay red light camera violations." (Emphasis added.)

Based on plaintiff's own allegations, defendant does not "assign" the red light citation to its employees. Rather, defendant's policy is that its employees must reimburse it for the citations that it is obligated to pay to municipalities due to red light camera violations. There is consequently no transfer of a right or an obligation from defendant to its employees, meaning that no assignment of the traffic citation has occurred. As a result, we find that defendant's action is properly characterized as disciplinary in nature because it imposes a monetary sanction on the employee for an alleged violation of a traffic law to the detriment of defendant. As a

disciplinary matter, defendant's practice of fining employees for red light camera violations falls under the CBA, and any dispute over this issue must be submitted through the grievance process.

Although we find that each component of defendant's policy is covered by the CBA and therefore must be addressed thorough the CBA's grievance procedures, plaintiff contends that the circuit court may still address plaintiff's claims because they exist independently of the CBA. Plaintiff relies on three cases for this proposition, but we find that each of these cases are distinguishable.

First, plaintiff relies on *Semmens v. Board of Education of Pontiac Community Consolidated School District No. 429*, 190 Ill. App. 3d 174 (1989). In *Semmens*, a group of teachers claimed that they had been unlawfully denied a duty-free lunch period of at least 30 minutes each day, in violation of section 24-9 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24-9). See *Semmens*, 190 Ill. App. 3d at 176. The circuit court granted the defendant's motion to dismiss on the ground that a collective bargaining agreement between the teachers and the school district required arbitration of any dispute before the Illinois Education Labor Relations Board. See *id.* The collective bargaining agreement contained a section entitled "Lunch Period," but the section was completely blank. See *id.* at 177. The appellate court reversed, finding that the collective bargaining agreement did not address the lunch period issue and that arbitration therefore was not mandatory. See *id.* at 181.

Unlike *Semmens*, the CBA in the instant case deals directly with discipline of employees. The CBA does not contain any specific clauses that specify what offenses an employee may be disciplined for, but this fact does not take the issue of discipline itself outside the scope of the CBA. The collective bargaining agreement in *Semmens* demonstrably failed to address the issue

9

of a lunch period. In contrast, the parties' present dispute is whether and how an employee may be disciplined for a red light camera citation, which is an issue that falls within the discipline clause of the CBA. We consequently find that *Semmens* is distinguishable.

Second, plaintiff cites *Daniels v. Board of Education of the City of Chicago*, 277 Ill. App. 3d 968 (1996). In *Daniels*, the plaintiffs sued to recover the value of accrued vacation days that they had not been able to use prior to being laid off by the defendant. See *id.* at 968. The trial court dismissed the complaint because the plaintiffs had not first exhausted their remedies under their collective bargaining agreement, which contained a section outlining how vacation days accumulate. See *id.* The appellate court reversed, finding that, although the collective bargaining agreement did address the issue of vacation days, the plaintiffs' cause of action did not arise under the agreement. See *id.* at 972. Instead, the court found that the plaintiffs had an independent statutory right to compensation for unused vacation days under the Illinois Wage Payment and Collection Act (820 ILCS 115/5 (West 1992)).

Unlike *Daniels*, there is no independent statutory right at issue here. Plaintiff argues that its action for declaratory judgment and an injunction arises from section 11-208.6 of the Vehicle Code (625 ILCS 5/11-208.6 (West 2008)), which requires a municipality to issue a citation for a red light camera violation to "the registered owner of the vehicle as the alleged violator." 625 ILCS 5/11-208.6(d) (West 2008). We do not agree with plaintiff's analysis. There is no indication in the complaint that defendant has caused any municipality to illegally issue a citation to an individual who is not the registered owner. Indeed, defendant acknowledges that it has a legal obligation to pay the fines because it owns the vehicles accused of violating section 11-208.6. Despite plaintiff's contentions, its cause of action arises from defendant's alleged

violation of the disciplinary clause of the CBA, not independently from a state statute. *Daniels* is therefore distinguishable.

Finally, plaintiff relies on *Croom v. City of DeKalb*, 71 Ill. App. 3d 370 (1979). In *Croom*, the plaintiff firefighters sought an injunction that would require the defendant to abide by an arbitration clause in their collective bargaining agreement during a dispute over additional pay for performing certain duties. See *id.* at 370-71. The agreement did not contain any provision that dealt with additional pay, and both the circuit court and the appellate court found that the parties had therefore not agreed to arbitrate that issue. See *id.* at 376.

We find *Croom* to be distinguishable for two reasons. First, the arbitration clause in *Croom* mandated arbitration only for grievances over express provisions of the collective bargaining agreement. See *id.* at 375. Because the question of additional pay was not expressly addressed in the agreement, it was therefore not subject to arbitration. See *id.* at 375-76. Unlike *Croom*, the CBA in the instant case requires all grievances that "arise under" the CBA to be submitted through the grievance process. This language is significantly broader than in *Croom*, and therefore a broader category of grievances than those expressly mentioned in the CBA are subject to arbitration. Second, discipline of defendant's employees is explicitly within the scope of the CBA, which is the opposite factual situation as that in *Croom* and which therefore requires a different result. *Croom* is consequently distinguishable.

CONCLUSION

Defendant's policy of imposing suspensions and fines on employees accused of red light camera violations is a disciplinary matter. Additionally, the issue of the sufficiency of notice that defendant provides to its employees regarding alleged red light camera violations is a

dispute over defendant's method of disciplining its employees. Because defendant's right to discipline its employees is a grievance that is within the scope of the CBA, it is subject to the grievance and arbitration process specified in the CBA. Plaintiff did not exhaust its contractual remedies under the CBA prior to bringing the instant action in the circuit court, and as a result the circuit court properly dismissed the complaint.

Affirmed.