# Illinois Official Reports

## Appellate Court

*Citibank, N.A. v. Illinois Department of Revenue*, 2016 IL App (1st) 133650

| | |
|---|---|
| Appellate Court Caption | CITIBANK, N.A., Plaintiff-Appellee, v. THE ILLINOIS DEPARTMENT OF REVENUE and BRIAN HAMER, Director of Revenue, Defendants-Appellants.—CHRYSLER FINANCIAL SERVICES AMERICAS, LLC, n/k/a TD Auto Finance, LLC, Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF REVENUE and BRIAN HAMER, Director of Revenue, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket Nos. 1-13-3650, 1-15-0812 cons. |
| Filed | November 2, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 13-L-50072, 13-L-50005; the Hon. Patrick J. Sherlock and the Hon. Robert Lopez-Cepero, Judges, presiding. |
| Judgment | Appeal No. 1-13-3650 affirmed.<br>Appeal No. 1-15-0812 dismissed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Carl J. Elitz, Assistant Attorney General, of counsel), for appellants Illinois Department of Revenue and Brian Hamer.<br><br>Horwood Marcus & Berk Chtrd., of Chicago (Fred O. Marcus, of counsel), and Akerman LLP, of Tampa, Florida (Brian R. Harris, of counsel), for appellee Citibank, N.A. |

| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. |
|---|---|
| | Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1     These consolidated appeals involve the review of the determinations of the Department of Revenue (Department) on claims by plaintiffs Citibank, N.A. (Citibank) and Chrysler Financial Services America, LLC, n/k/a TD Auto Finance, LLC (Chrysler), for refunds of taxes under section 6 of the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/6 (West 2012)). Citibank and Chrysler sought refunds of ROTA taxes associated with uncollectible debt on credit and installment contracts financed by Citibank and Chrysler for the purchase of goods. The Department denied both Citibank's and Chrysler's claims for refunds. The circuit court reversed the Department's determination on Citibank's claim, which the Department now appeals (Appeal No. 1-13-3650). In contrast, the circuit court affirmed the Department's determination on Chrysler's claim, in response to which Chrysler instituted the other appeal at issue in this matter (Appeal No. 1-15-0812).

¶ 2     For the reasons that follow, we affirm the judgment of the circuit court on Citibank's claim. Although involving very similar facts relevant to the issue of standing, Chrysler's appeal must be dismissed for lack of jurisdiction.

¶ 3                                    BACKGROUND
¶ 4                                Appeal No. 1-13-3650
¶ 5     In its claim to the Department, Citibank sought a refund of $1,600,853.32 in ROTA taxes paid on sales funded through the use of consumer accounts owned by Citibank. Citibank's claim was submitted to the Department's administrative law judge (ALJ) on facts stipulated to by the parties. Those stipulated facts established the following:

¶ 6     The retailers (doing business in Illinois) involved in the sales at issue provided their customers with the option to finance their purchases, including the applicable ROTA tax, on a credit basis. Citibank, through agreements with the retailers, would then originate or acquire those consumer charge accounts and receivables from the retailers on a nonrecourse basis. Under these agreements, Citibank acquired all rights related to the accounts, including the right to all payments from the consumers and the right to claim ROTA tax refunds or credits.

¶ 7     Each time a consumer used his or her account to finance a purchase, Citibank would remit to the retailer the full amount financed by the consumer, including any applicable ROTA tax. The retailer would then remit the ROTA tax to the State.

¶ 8     Eventually, some of the consumers on these accounts defaulted, leaving unpaid balances that included amounts attributable to financed ROTA taxes. After attempting to collect the balances on the defaulted accounts, Citibank determined that the defaulted accounts were worthless, wrote the balances off on its books and records, and claimed the balances as bad debt on its federal income taxes between January 1, 2008, and December 31, 2009.

¶ 9 The $1,600,853.32 Citibank sought to have refunded constituted that portion of the ROTA taxes attributable to the unpaid and written off balances of the defaulted consumer accounts.

¶ 10 On January 31, 2011, the Department issued a notice of tentative denial to Citibank. In response, Citibank requested an administrative hearing. In his recommendation for disposition, the ALJ recommended that (1) Citibank's claim be denied on the bases that Citibank did not include all of the required information or sufficient detail on its application for a refund, (2) Citibank did not bear the burden of the ROTA tax, (3) the ROTA tax was not paid in error, (4) there was no evidence that any erroneously paid taxes were refunded to the consumer, (5) Citibank was not the remitter of the taxes to the State, and (6) the assignments from the retailers to Citibank did not give Citibank a right to a refund of the ROTA taxes. On December 13, 2012, the Director of the Department adopted the ALJ's recommendation. Citibank appealed to the circuit court of Cook County.

¶ 11 On October 17, 2013, the circuit court issued an order reversing the Department's denial of Citibank's claim. The circuit court concluded that the primary issue was whether Citibank bore the burden of the taxes, not whether it was a retailer, as neither the applicable statute nor the applicable administrative regulation limited refunds to retailers. According to the circuit court, even if it was of some consequence whether Citibank was a retailer, the retailers had properly assigned their rights to Citibank, entitling Citibank to a refund. Finally, the circuit court concluded that Citibank was not required to refund the taxes to the consumer before seeking a refund and that Citibank did not fail to provide all of the information required in its application for a refund.

¶ 12 The Department then filed a timely notice of appeal.

¶ 13                                      Appeal No. 1-15-0812

¶ 14 In its claim, Chrysler sought a refund of $4,630,622.71 in ROTA taxes on the sales of certain motor vehicles. As in the previous appeal, Chrysler's claim was submitted to the Department's ALJ on facts stipulated to by the parties. Those stipulated facts established the following.

¶ 15 For the sales at issue, the retailer and consumer entered into retail installment contracts (in Illinois) under which the consumer agreed to pay the entire amount financed over time in fixed installments of a specific sum. The total amount financed included the total purchase price of the vehicle, along with the total ROTA tax due on the sale, minus any down payment made by the consumer. Any down payments were applied pro rata between the purchase price and the ROTA tax.

¶ 16 Contemporaneously with the execution of the installment contracts, the retailers assigned to Chrysler all of their rights, titles, and interests in the installment contracts, without recourse. The assignments included the right to enforce the debt and to repossess the collateral in the event of default by the consumers. In exchange for these assignments, Chrysler paid the retailers the entire amounts financed under the contracts. The retailers then reported and remitted to the State the amount of ROTA taxes due on each of the sales.

¶ 17 Some of the consumers who entered into the installment contracts with the retailers defaulted on their obligations to pay, resulting in a failure to fully repay the total purchase price and ROTA tax amounts. In some instances, the vehicles were repossessed and sold. Any

amounts collected on the sale of the repossessed vehicles were applied pro rata between what remained of the sales price and the ROTA tax.

¶ 18    Following reasonable attempts to collect any outstanding balances on the defaulted installment contracts, Chrysler determined them to be worthless and claimed the remaining balances as bad debts on their federal taxes. These bad debts were written off between April 1, 2006, and March 31, 2009.

¶ 19    The $4,630,622.71 Chrysler sought to have refunded constituted the portion of the ROTA taxes attributable to the unpaid and written off balances of the defaulted installment contracts.

¶ 20    On August 6, 2010, the Department issued a notice of tentative denial to Chrysler. In response, Chrysler requested an administrative hearing. In his recommendation for disposition, the ALJ recommended that (1) Chrysler's claim be denied on the bases that Chrysler did not bear the burden of the ROTA tax, (2) the ROTA tax was not paid in error, (3) there was no evidence that any erroneously paid taxes were refunded to the consumer, (4) Chrysler was not the retailer of the goods sold and did not remit the ROTA taxes to the State, (5) the assignment from the retailer to Chrysler did not give Chrysler a right to a refund of the ROTA taxes, and (6) Chrysler failed to prove the claimed refund amount. On November 29, 2012, the Department issued its final determination, denying Chrysler's claim. Chrysler appealed to the circuit court of Cook County.

¶ 21    On March 14, 2014, the circuit court issued an order sustaining the Department's denial of Chrysler's claim on the bases that (1) no tax was paid in error, (2) Chrysler did not remit the ROTA taxes to the State, (3) Chrysler was not a retailer, (4) the assignments did not bind the State, and (5) Chrysler did not bear the burden of the ROTA taxes.

¶ 22    Eight and a half months later, on November 25, 2014, Chrysler filed a petition to modify the judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)). In the section 2-1401 petition, Chrysler claimed that it did not learn that the circuit court had issued its decision on Chrysler's appeal until October 2014. Chrysler claimed that upon review of the circuit court's decision, it realized that the circuit court had failed to address Chrysler's contention that the ALJ erred in disregarding the parties' stipulation as to the amount of Chrysler's claim and requiring Chrysler to support the claimed amount with documentation. Chrysler requested that the circuit court modify its March 14, 2014, judgment to include an analysis of this issue.

¶ 23    On December 16, 2014, the circuit court issued an order simply stating that the section 2-1401 petition was granted. Thereafter, on March 3, 2015, the circuit court issued a supplemental opinion, which was identical to its March 14, 2014, order, with the exception that it also contained the circuit court's conclusion that the ALJ had erred in disregarding the parties' stipulation as to the amount of Chrysler's claim and a statement that the period for appeal of the circuit court's decision began to run as of the date the circuit court's supplemental opinion was entered.

¶ 24    Chrysler filed its notice of appeal on March 19, 2015, purporting to appeal from the circuit court's supplemental opinion under Illinois Supreme Court Rule 303(a)(3) (eff. Jan. 1, 2015).

ANALYSIS

On appeal, both Citibank and Chrysler argue that they are entitled to refunds of the ROTA taxes attributable to the uncollectible debt on the defaulted credit and installment contracts, because they bore the burden of the ROTA taxes and because the retailers assigned the rights to such refunds to Citibank and Chrysler. The Department, on the other hand, argues that Citibank and Chrysler lack standing to obtain refunds of the ROTA taxes because they are not retailers who remitted the taxes to the State. As we discuss below, Citibank is entitled to a refund as the assignee of the retailers. Chrysler's appeal, however, must be dismissed for lack of jurisdiction.

Appeal No. 1-13-3650

On appeal, the Department argues that Citibank is not entitled to a refund of ROTA taxes attributable to the uncollected amounts on the defaulted accounts because (1) Citibank lacks standing under the relevant statute to seek such a refund because it is not a retailer, and (2) even if it did have standing, Citibank failed to comply with the procedural application requirements of the applicable statutes and regulations. For the reasons that follow, we conclude that Citibank had standing by way of assignment to seek a refund and that any deficiencies in Citibank's application were moot because the Department stipulated that the refund amount sought by Citibank was comprised of ROTA taxes attributable to the unpaid debt.

We first address the Department's motion to strike a portion of Citibank's brief on the basis that it cites to the unpublished decision of *Home Depot USA, Inc. v. Hamer*, No. 4-09-0611 (May 5, 2010) (unpublished order under Supreme Court Rule 23), for the proposition that the Department is collaterally estopped from arguing that Citibank did not bear the burden of the ROTA taxes at issue and, thus, did not have standing to seek a refund. Because we resolve this case on different grounds and do not consider the holding of *Home Depot* in reaching our decision, the Department's motion is denied as moot.

We turn now to the merits of this case. On appeal, we review the determination of the administrative agency, not that of the circuit court. *Richard's Tire Co. v. Zehnder*, 295 Ill. App. 3d 48, 56 (1998). Administrative agency decisions on questions of law—such as whether a party has standing—are reviewed *de novo*. See *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998); *Kohls v. Maryland Casualty Co.*, 144 Ill. App. 3d 642, 644 (1986). Questions of mixed law and fact—such as whether Citibank is entitled to a refund of ROTA taxes—are reviewed for clear error. *City of Belvidere*, 181 Ill. 2d at 205.

The Department first contends that Citibank lacks standing to seek a refund of ROTA taxes because it is not a retailer that remitted the taxes to the State and because the right to a refund could not be assigned to Citibank by the retailers. We need not address the Department's contention that only retailers that remit the taxes have standing to pursue a refund because we conclude that even if only remitting retailers have standing under the statute, the retailers in the present case effectively assigned their rights to pursue a refund to Citibank.

The parties do not quibble about the law applicable to assignments. An assignment is a transfer of property or a right from one person to another, which confers a complete and present right in the property or right to the assignee. *Amalgamated Transit Worker's Union v. Pace Suburban Division*, 407 Ill. App. 3d 55, 60 (2011). Assignability is the rule in today's legal world, and nonassignability is the exception. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill. 2d 214, 225 (1998). Both common law and statutory

rights are assignable unless a statute or public policy clearly states otherwise. *Amalgamated Transit*, 407 Ill. App. 3d at 60. Following an assignment, the assignee stands in the shoes of the assignor with respect to the rights, title, and interest in the thing assigned. *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 512 (1988); *In re Estate of Martinek*, 140 Ill. App. 3d 621, 629-30 (1986).

¶ 33    The Department asserts that the assignment of the right to a refund of ROTA taxes is prohibited by section 6 of ROTA and violates public policy. We address each of these in turn.

¶ 34    Our supreme court has explained the tax scheme under ROTA and the complementary Use Tax Act (35 ILCS 105/3 (West 2006)) as follows:

> "ROTA and the Use Tax Act are complementary, interlocking statutes that comprise the taxation scheme commonly referred to as the Illinois 'sales tax.' [Citations.] Whereas ROTA imposes a tax 'upon persons engaged in the business of selling at retail tangible personal property' [citation], the Use Tax Act imposes a tax 'upon the privilege of using in this State tangible personal property purchased at retail from a retailer' [citation]. ***
>
> A retailer's tax liability under ROTA is computed as a percentage of 'gross receipts' (35 ILCS 120/2-10 (West 2006)), defined as the 'total selling price' (35 ILCS 120/1 (West 2006)). Similarly, the use tax is determined as a percentage of the 'selling price.' 35 ILCS 105/3-10 (West 2006)." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 362 (2009).

The tax rate under both ROTA and the Use Tax Act is 6.25%. 35 ILCS 120/2-10 (West 2014); 35 ILCS 105/3-10 (West 2014).

¶ 35    Typically, the retailer collects the use tax from the consumer and remits it to the Department. A retailer need not remit the use tax, however, if it has paid the ROTA tax on the gross receipts of the same sale. Accordingly, although a single sale and purchase triggers the duty to pay two different taxes, the Department receives payment for only one of the taxes, and that payment satisfies both taxes. *Kean*, 235 Ill. 2d at 363.

¶ 36    With respect to refunds of ROTA taxes, section 6 of ROTA provides in relevant part:

> "If it appears, after claim therefor filed with the Department, that an amount of tax or penalty or interest has been paid which was not due under this Act, whether as a result of a mistake of fact or an error of law, except as hereinafter provided, then the Department shall issue a credit memorandum or refund to the person who made the erroneous payment ***." 35 ILCS 120/6 (West 2014).

The Department contends that this section limits refunds to the remitter of the tax and, therefore, also prohibits the assignment of the right to a refund to anyone other than the remitter of the tax. We disagree. The language of section 6 does not discuss the assignment of the right to a tax refund, much less limit or prohibit the assignment of such a right. Even if section 6 bestows the right to a tax refund solely upon the remitter of the tax, that does not mean that after the initial bestowment, the remitter is not free to do what it pleases with that right. Given the lack of language in section 6 limiting the assignment of the right to a refund, we conclude that the retailers' assignments to Citibank were not precluded by statute. See *People ex rel. Stone v. Nudelman*, 376 Ill. 535, 539 (1940) (concluding that because the language of the statute did not limit what could be done with a credit memorandum after it was issued or otherwise discuss its assignability, the credit memo was assignable).

¶ 37    The Department also argues that the assignment of a right to a ROTA tax refund violates public policy (1) because it could result in the refund of taxes not actually paid, leading to the unjust enrichment of persons who did not pay the taxes themselves, and (2) because Citibank was compensated through vendor discounts, cardholder charges, and interest payments. With respect to the first contention, the Department claims that assignments are more likely to result in mistakenly issued refunds than if refunds are limited to those with whom the Department has an existing taxpayer/collector relationship, *i.e.*, retailers. In illustration of this point, the Department points to Citibank's claimed failure to present documentation evidencing the transactions underlying the bad debts. The Department does not explain, and we do not find, any correlation between this supposed lack of evidence and Citibank's status as an assignee. Rather, as discussed below, any lack of documentation on the part of Citibank appears to have been a result of the parties' stipulation to the amount of taxes attributable to the uncollected debt, not Citibank's status as an assignee. Moreover, the conclusion that the right to a refund under section 6 is assignable does not alter the procedural requirements a claimant—whether remitter or assignee—must comply with before a refund will be issued. Therefore, the Department is still free to vet applications for refunds in the same manner it always has.

¶ 38    We also find to be without merit the Department's second contention that the assignment of the right to a ROTA tax refund violates public policy because it would be unfair to allow Citibank to collect a tax refund where it has already been compensated—through vendor discounts, cardholder charges, and interest payments—for the "bad debt risks" inherent in its business through vendor discounts, cardholder charges, and interest payments. The compensation Citibank receives for its services has no bearing on whether the right to a tax refund is assignable. More importantly, it is not the province of this Court to police what is considered to be fair compensation for Citibank's services. Resolution of what constitutes fair compensation belongs to the parties to the agreement—Citibank and the retailers—and it would appear that the parties considered Citibank's services to be worth not only the vendor discounts, cardholder charges, and interest payments, but also the assignment of any ROTA tax refund that might become due. Thus, regardless of whether the vendor discounts, cardholder charges, and interest payments do, in fact, adequately compensate Citibank for the risks they run in financing purchases by consumers, it is inappropriate to invoke public policy to undo an agreement between the parties. See *Kleinwort*, 181 Ill. 2d at 226 ("The power to invalidate part or all of an agreement on the basis of public policy is used sparingly because private parties should not be needlessly hampered in their freedom to contract between themselves.").

¶ 39    Although interwoven into its other arguments, the Department also argues that Citibank is not entitled to a refund via the assignments, because the retailers (the assignors) would not be entitled to a refund under the present circumstances. We disagree. Pursuant to the Department's regulation 130.1960(d) (86 Ill. Adm. Code 130.1960(d) (2000)), a retailer who incurs bad debt on a sale may obtain a "bad debt credit" to the extent that the retailer has paid ROTA taxes on the uncollected debt or to the extent that he has paid ROTA taxes on a portion of the sales price that he is not permitted to retain due to repayment to a lending agency under a "with recourse" agreement. To qualify, the written off debts must be deducted on the retailer's federal taxes. 86 Ill. Adm. Code 130.1960(d)(1)-(2) (2000). These taxes are considered to be paid in error, and the retailer may file a claim for their refund pursuant to section 6 of ROTA. 86 Ill. Adm. Code 130.1960(d)(3) (2000).

¶ 40    According to the parties' stipulation, in the course of business the retailers would offer financing to their customers. Citibank then originated or acquired those credit accounts and receivables from the retailers by way of assignments that included the retailers' rights to any and all payments from the consumer and to claim ROTA tax refunds. In exchange, Citibank would remit to the retailer the entire purchase price plus any applicable ROTA tax. Under these facts, had the assignments not occurred and the retailers retained the accounts on which the consumers defaulted, they would have been permitted to obtain a refund of the ROTA taxes attributable to those portions of the defaulted accounts that were not collected, so long as they deducted the debts on their federal taxes. Accordingly, because the retailers would have been permitted to obtain a refund had they not assigned the accounts, Citibank, by stepping into the retailers' shoes via assignment, should also be permitted to obtain a refund.

¶ 41    The Department disagrees with this conclusion because, according to it, to take advantage of the bad debt credit, the retailer must have either financed the sale itself or have a "with recourse" agreement with a lender. There is no dispute that the latter does not apply because the parties stipulated that the agreements between the retailers and Citibank were without recourse. As to the former, however, the Department contends that the retailers did not finance the transactions, Citibank did. Even assuming that the bad debt credit regulation requires that a retailer self-finance, the parties' stipulation indicates that is what happened here.

¶ 42    Admittedly, the stipulation of the parties does not specifically state whether the retailers entered into financing agreements directly with the consumers and then sold the rights under those agreements to Citibank or whether Citibank entered into financing agreements directly with the consumer. The stipulation does state, however, that Citibank originated or acquired the accounts *from the retailers* and that Citibank *acquired* all rights to payments from the consumers and to ROTA refunds or credits by way of its agreements with the retailers. These statements do not make sense unless the retailers entered into financing agreements with the consumers directly and then sold and assigned their rights under those financing agreements to Citibank in exchange for payment of the financed amount. After all, if Citibank had not provided the financing directly to the consumer, there would have been nothing for the retailers to assign to Citibank or for Citibank to acquire from the retailers. See *People v. One 1999 Lexus*, 367 Ill. App. 3d 687, 692-93 (2006) (stating that stipulations are contracts and that they should not be interpreted in such a way so as to render any portion meaningless).

¶ 43    The Department also argues that retailers would not have been able to obtain a refund because there is no evidence that any of the ROTA taxes were refunded to the consumers. Section 6 of ROTA provides:

> "No credit may be allowed or refund made for any amount paid by or collected from any claimant unless it appears that the claimant has unconditionally repaid, to the purchaser, any amount collected from the purchaser and retained by the claimant with respect to the same transaction under the Use Tax Act." 35 ILCS 120/6 (West 2014).

This language does not require a refund claimant to return any and all taxes collected from the consumer before pursuing any refund whatsoever. Rather, it simply limits the refund a claimant may seek to those taxes that were paid but not collected from the consumer. Those taxes that were both paid to the State and collected from consumers, however, cannot be refunded to claimants absent refunds being first issued to the consumers. Here, the parties stipulated that the ROTA taxes were paid to the State, but that the consumers did not repay all of the ROTA taxes, *i.e.*, Citibank did not collect all of the taxes. The parties further stipulated

that it is these uncollected taxes (as opposed to all of the ROTA taxes) for which Citibank seeks a refund.

¶ 44     The Department's contention that the retailers collected the entire amount of taxes from the consumers and, therefore, a refund is unavailable unless the taxes are first refunded to the consumers is unavailing. First, the retailers did not collect the taxes from the consumer; they collected them from Citibank. Second, as previously discussed, as assignee, Citibank steps into the shoes of the retailers, meaning that if there had been no assignment and the retailers retained the defaulted accounts (and, thus, no deal with Citibank), the retailers would not have been required to refund to the consumers taxes that the consumers had not paid in the first place. Thus, Citibank is also not required to refund to the consumers taxes the consumers have not actually paid. Instead, Citibank is simply limited to seeking a refund of those taxes that remain uncollected.

¶ 45     Finally, the Department contends that Citibank is not entitled to a refund because it failed to comply with the procedural application requirements of the applicable statutes and regulations, namely, that it failed to provide information required under section 6a of ROTA and failed to submit supporting documentation. More specifically, the Department argues that (1) Citibank failed to identify the merchants that made the sales at issue; (2) represented that it (as opposed to the retailers) had overpaid taxes in an amount that equated to a tax rate of 8%; (3) signed the application form, stating that it had repaid any overpaid sales tax collected from its customers; and (4) failed to submit documentary evidence in support of its claimed tax overpayment.

¶ 46     According to the Department, this information was necessary to ensure that any refund given to Citibank did not exceed the amount of the overpaid taxes. Although we agree that it is important to ensure that any refunds issued are in the correct amount, there is no such concern in this case, as the parties specifically stipulated that the amount Citibank sought to have refunded was "the portion of balances that were written off as bad debts that is attributable to the Retailers' Occupation Tax." Because the parties stipulated that the claimed refund amount was equal to the amount of ROTA taxes not collected from the consumers, there was no need for Citibank to provide additional information or evidence in support of this claim. *One 1999 Lexus*, 367 Ill. App. 3d at 691.

¶ 47     In sum, we conclude that Citibank does have standing to pursue a refund of the ROTA taxes attributable to the uncollected debts as a result of the assignments from the retailers. Any deficiency in Citibank's application for refund or supporting documentation is moot, as the Department stipulated to the amount of ROTA taxes attributable to the uncollected debt, dispensing with the need for Citibank to present any other evidence on the issue.

¶ 48                                    Appeal No. 1-15-0812

¶ 49     Although the legal issues raised by Chrysler in appeal number 1-15-0812 are similar to those raised in the Citibank appeal, we are unable to address them, as we lack jurisdiction over this appeal. The Department argues that this Court lacks jurisdiction to consider Chrysler's appeal, because Chrysler failed to file a timely notice of appeal following the circuit court's entry of its March 14, 2014, order resolving Chrysler's challenge to the Department's denial of its claim for a ROTA tax refund. Even if the Department had not raised a jurisdictional challenge, we have a duty to consider our jurisdiction *sua sponte* and to dismiss if jurisdiction is wanting. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1024-25 (2003).

¶ 50　　To recap, on March 14, 2014, the circuit court issued its order upholding the Department's denial of Chrysler's claim for a ROTA tax refund. Eight and a half months later, on November 25, 2014, Chrysler filed its section 2-1401 petition. On December 16, 2014, the circuit court issued an order granting the section 2-1401 petition. Thereafter, on March 3, 2015, the circuit court issued its supplemental opinion, which was identical to the March 14, 2014, order, except that it contained a discussion of the ALJ's disregard of the parties' stipulation and a statement that the time for appeal would begin to run from the entry of the supplemental opinion. Chrysler filed its notice of appeal on March 19, 2015.

¶ 51　　In its statement of jurisdiction on appeal, Chrysler claims that it filed its notice of appeal within 30 days of the entry of the March 3, 2015, supplemental opinion, and, therefore, this Court has jurisdiction under Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994), and 303(a)(1) (eff. Jan. 1, 2015). Rule 301 provides that every final judgment of a circuit court in a civil case is appealable as of right. Rule 303(a)(1) requires that the notice of appeal from such orders be filed within 30 days of the entry of the final judgment. To be final, an order must dispose of the parties' rights "either upon the entire controversy or upon such definite and separate part thereof, such as a claim in a civil case." (Internal quotation marks omitted.) *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009).

¶ 52　　On March 14, 2014, the circuit court issued its order upholding the Department's denial of Chrysler's claim for a ROTA tax refund. This order fully disposed of Chrysler's claim seeking review of the Department's determination that it was not entitled to a refund. Because the court's order resolved all pending claims against all parties in the case, it was a final and appealable order. At that point, Chrysler had four options: file a timely posttrial motion within 30 days, file a timely notice of appeal within 30 days, do nothing and accept defeat, or file a section 2-1401 petition within two years. Chrysler chose the last option, filing its section 2-1401 petition requesting that the circuit court address its argument regarding the ALJ's disregard of the stipulated amount of its claim.

¶ 53　　Even so, we still lack jurisdiction to review Chrysler's appeal. The circuit court granted Chrysler's section 2-1401 petition on December 16, 2014. This was a final order resolving that section 2-1401 petition. Chrysler was obligated to file its appeal within 30 days of that date. It did not.

¶ 54　　Chrysler cannot rely on the entry of the March 3, 2015, supplemental opinion as the date that triggered its obligation to file a notice of appeal. According to Chrysler, the supplemental opinion was not related to the section 2-1401 petition, but instead was a modification of the circuit court's March 14, 2014, original opinion. This, however, means that the supplemental opinion was entered without authority because it was entered more than 30 days after the March 14, 2014, opinion. *City of Chicago v. Heinrich*, 187 Ill. App. 3d 876, 877-78 (1989); *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652, 656-57 (1979). If the circuit court lacked jurisdiction to enter the supplemental opinion, then we lack jurisdiction to review it. *Keener v. City of Herrin*, 235 Ill. 2d 338, 350 (2009) ("Because the circuit court had no jurisdiction to enter its order of August 25, 2006, the appellate court had no jurisdiction to review that judgment.").

¶ 55　　We further note that the circuit court's inclusion of a statement that the time for appeal began to run as of the date the supplemental opinion has no effect on our analysis. The supreme court rules determine when and how a timely notice of appeal is taken, and the circuit court

lacks authority to extend that time. *Meyer v. Blue Cab Co.*, 129 Ill. App. 3d 440, 441 (1984). Moreover, as discussed above, the trial court lacked jurisdiction to modify the March 14, 2014, opinion after 30 days, thus depriving us of any jurisdiction to review the supplemental opinion. The trial court's statement does not cure the trial court's lack of jurisdiction to enter the supplemental opinion and, accordingly, does not cure our lack of jurisdiction to review it.

¶ 56 Ultimately, no matter how we view it, we lack jurisdiction over Chrysler's appeal. This is fitting, as Chrysler seeks review of only those issues decided by the circuit court in the original opinion, which was issued over a year before Chrysler filed its notice of appeal. If Chrysler desired to appeal the circuit court's judgment upholding the denial of Chrysler's claim, it should have done so within 30 days of that determination, *i.e.*, by April 14, 2014. Its failure to keep abreast of the status of its case, such that it did not learn of the entry of the circuit court's March 14, 2014, opinion until six and a half months later does not excuse Chrysler from the duty to file a timely notice of appeal (see *Mitchell*, 158 Ill. 2d at 150). Accordingly, we conclude that we lack jurisdiction to review it, and this appeal must be dismissed.

¶ 57                                        CONCLUSION

¶ 58 In appeal number 1-13-3650, we affirm the circuit court of Cook County's judgment, as we conclude that the assignments from the retailers afforded Citibank standing to pursue a refund of the ROTA taxes attributable to the uncollected debt. Although Chrysler's appeal involves facts similar to those in Citibank's appeal, including assignments from the retailers to Chrysler, we are unable to afford Chrysler any relief from the ALJ's decision in appeal number 1-15-0812, because we lack jurisdiction to address Chrysler's contentions. Accordingly, we dismiss that appeal.

¶ 59        Appeal No. 1-13-3650 affirmed.

¶ 60        Appeal No. 1-15-0812 dismissed.