DEAN GANTZ *et al.*, Plaintiffs-Appellants, v. THE McHENRY COUNTY SHERIFF'S DEPARTMENT MERIT COMMISSION *et al.*, Defendants-Appellees.

Second District   No. 2—97—0454

Opinion filed May 8, 1998.

James T. Magee, of Magee, Negele & Associates, of Round Lake, for appellants.

William I. Caldwell, Jr., of Caldwell, Berner & Caldwell, of Woodstock, for appellee McHenry County Sheriff's Department Merit Commission.

Gary W. Pack, State's Attorney, and James T. Harrison, of Harrison Law Offices, P.C., both of Woodstock, for appellee County of McHenry.

Bruce C. Beal, of Claudon, Lloyd, Barnhart & Beal, Ltd., of Canton, for appellees George H. Hendle and William Mullen.

JUSTICE RATHJE delivered the opinion of the court:

Plaintiffs, Dean Gantz *et al.*, filed a three-count complaint seeking declaratory judgment, injunctive relief, and damages. The crux of the complaint was that plaintiffs, nonmerited deputies working at the McHenry County jail, were entitled to the same compensation under a 1990-to-1993 collective bargaining agreement (CBA) as the merited deputies who worked at the county jail. Defendants McHenry County Sheriff's Department Merit Commission (Merit Commission), McHenry County (County), and William Mullen, the sheriff of McHenry County (sheriff), filed a motion to dismiss the complaint. After a hearing, the trial court found that plaintiffs' complaint was barred on three grounds: (1) the running of the statute of limitations under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8—101 (West 1994)); (2) the lack of subject matter jurisdiction, *i.e.*, preemption of collective bargaining issues under the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/1 *et seq.* (West 1994)); and (3) *res judicata*, where a prior arbitration decision based upon the same facts and parties had already disposed of the issues raised in plaintiffs' complaint.

The record reveals the following facts. Plaintiffs were 55 correctional officers assigned to work at the McHenry County jail. All plaintiffs were hired after an ordinance was adopted by the County on February 16, 1988. The ordinance removed all correctional officers from the jurisdiction of the Merit Commission. The last of the plaintiffs hired took his position over a year before the filing of the subject complaint on June 5, 1996. None of the plaintiffs was hired or certified through the Merit Commission. Plaintiffs' principal duties were to operate and maintain the County jail.

Approximately six merited deputy sheriffs were assigned to the County jail and performed the same duties as the nonmerited deputies. However, these merited deputy sheriffs were hired before 1988 and were certified by the Merit Commission. Together, the nonmerited and merited deputies working at the County jail constituted a bargaining unit, which was designated the "Corrections Officer Bargaining Unit" (the Unit).

The Illinois Fraternal Order of Police Labor Council, on behalf of and with Lodge No. 119 (the Union), was the exclusive representative for all bargaining units in the sheriff's department. Since 1987, the Union, the County, and the sheriff had worked out CBAs covering, *inter alia*, the employees within the Unit. In the 1990-to-1993

CBA, which is the focus of this appeal, the Union, the County, and the sheriff expressly bargained for a dual rate of pay for work performed at the County jail by the merited and nonmerited deputies. Despite the fact that merited and nonmerited deputies performed the same duties, the merited deputies received a higher rate of pay than the nonmerited deputies. Under the CBA covering 1993 to 1996, the rate of pay for these two classifications of employees within the Unit was made equal, and plaintiffs make no claim for additional pay under the latter CBA.

The Union filed a grievance on November 4, 1993, just as the 1990-to-1993 contract was expiring and when negotiations for the 1993-to-1996 agreement were commencing. This grievance was brought pursuant to the terms and conditions of the 1990-to-1993 CBA. The grievance alleged that, under said CBA, the nonmerited deputies should have been deemed merited deputies, *i.e.*, they should have received the same compensation as the merited deputies working at the County jail. On January 11 and 12, 1996, the arbitrator held a hearing on the grievance. On July 31, 1996, the arbitrator issued a decision which denied the grievance. The arbitrator found, *inter alia*, that the Union and the grievants had no basis to complain about the dual pay scale within the Unit because the latter were paid according to the wage scale that was bargained for under the subject CBA. Subsequently, plaintiffs brought the subject cause of action against defendants in the trial court.

We first address plaintiffs' argument that the trial court erred in granting the motion to dismiss on the basis that it lacked subject matter jurisdiction. This general issue can be broken down into three subissues, namely, (1) whether the plaintiffs' allegations, in effect, amount to a charge of breach of the duty of fair representation against the Union and, thus, plaintiffs' complaint comes within the Illinois State Labor Relations Board's (ISLRB's) jurisdiction; (2) whether the ISLRB has exclusive jurisdiction over the collective bargaining issues raised by plaintiffs; and (3) whether the grievance portion of the subject CBA permits plaintiffs to pursue a cause of action in the courts.

Interestingly, plaintiffs' briefs never directly address the issue of subject matter jurisdiction. However, defendants' briefs, particularly those of the sheriff and the County, argue extensively that the issue of unequal wages between the merited and nonmerited deputies within the Unit was a matter under the jurisdiction of the ISLRB. Specifically, defendants assert that plaintiffs have been paid under the terms of the 1990-to-1993 CBA, which were negotiated by the Union, the sheriff, and the County in full accordance with the Act.

They contend that plaintiffs' complaint seeks to achieve through litigation in the courts what plaintiffs could not gain through negotiations by their exclusive bargaining representative, the Union. Defendants maintain that plaintiffs' argument is with the Union, which, according to defendants, essentially breached its duty of fair representation by negotiating a CBA that permitted a two-tier wage scale for merited and nonmerited deputies. Defendants argue that the proper forum for plaintiffs' concerns is the ISLRB.

We now address the first subissue, *i.e.*, whether plaintiffs had essentially alleged a breach of the duty of fair representation against the Union, a claim that was under the ISLRB's jurisdiction. In the instant appeal, there is no dispute that plaintiffs were members of a bargaining unit that was represented by the Union. There is no dispute that the Union, the sheriff, and the County fashioned CBAs for all the units of the sheriff's department for the years 1990 to 1993 and that plaintiffs' unit ratified the CBA, which provided, *inter alia*, for plaintiffs' wages and working conditions. As noted above, the crux of plaintiffs' cause of action is that they were improperly relegated to a wage scale inferior to that of merited deputies working in the jail. In this context, we find that such an assertion is tantamount to alleging a breach of the duty of fair representation against the Union in fashioning the subject CBA.

■ In *Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726*, 167 Ill. 2d 180, 193-94 (1995), the supreme court stated:

"The Act prohibits employers and labor organizations and their agents from engaging in unfair labor practices, and the Act contains procedures for resolving claims of that nature. [Citation.] Under those provisions, an employer may not, for example, refuse to bargain in good faith with the exclusive representative of an employee group or violate an order concerning a representation election. [Citation.] Nor may an employer interfere with rights granted to employees by the Act or discriminate against an employee for engaging in protected activity. [Citation.] The Act prohibits corresponding forms of misconduct by labor organizations and their members. [Citation.] *Unfair labor practice charges are to be filed with the appropriate labor board, which may investigate the charge, hear evidence, and grant relief.* Review of a labor board's disposition of an unfair labor practice charge lies directly to the appellate court. [Citation.] The boards may also institute proceedings in circuit court to enforce their dispositional orders." (Emphasis added.)

Moreover, "the Act imposes upon exclusive representatives the duty of fair representation[,] and *** an exclusive bargaining repre-

sentative commits an unfair labor practice pursuant to section 10(b)(1) of the Act when it fails to fairly represent the interest of all members of a bargaining unit as required by section 6(d) of the Act." *Foley v. American Federation of State, County, & Municipal Employees*, 199 Ill. App. 3d 6, 8-9 (1990).

Further, section 6(d) of the Act provides in pertinent part:

"Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of *all* public employees in the unit." (Emphasis added.) 5 ILCS 315/6(d) (West 1994).

■ Admittedly, the Act is relatively silent on what constitutes a breach of the duty of fair representation by an exclusive representative. However, we infer from its language that the Union's bargaining of a CBA under which nonmerited deputies earned less than merited deputies even though they did the exact same work is an example of an alleged breach of the duty of fair representation, which should be addressed to the ISLRB, not the circuit court.

In *Foley*, the appellate court described some compelling reasons why such actions should go to the ISLRB rather than to circuit courts.

"Inconsistent judgments and forum shopping will be inevitable if we pronounce a rule whereby breach of the duty of fair representation claims can be maintained in the circuit courts, as well as before the Board. Furthermore, our already overburdened court system would face increased amounts of unnecessary litigation." *Foley*, 199 Ill. App. 3d at 11.

In the next subissue, defendants argue that the Act gives the ISLRB *exclusive jurisdiction* over the matters related to collective bargaining. The defendants cite the Act, which provides in pertinent part:

"(a) There is created the Illinois State Labor Relations Board *** which shall have *jurisdiction over collective bargaining matters* between employee organizations *** and units of local government ***." (Emphasis added.) 5 ILCS 315/5(a) (West 1994).

The Act further provides:

"(a) In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control. ***

(b) Except as provided in subsection (a) above, any collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary

statutes, charters, ordinances, rules or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public employer or its agents." 5 ILCS 315/15(a), (b) (West 1994).

It is clear from this statutory language that, in disputes arising from CBAs, the ISLRB has jurisdiction over the subject claims. In the instant appeal, plaintiffs' failure to submit initially their claims concerning the 1990-to-1993 CBA to the ISLRB further served to divest the circuit court of subject matter jurisdiction over plaintiffs' cause of action.

Regarding the final subissue, defendants point to the following language found in the CBA. (Here we must note that the 1990-to-1993 CBA is not part of the appellate record. However, the 1993-to-1996 CBA is in the record, and apparently it contains the same language as the relevant portions of the prior CBA. The parties do not argue that the subject language of the 1993-to-1996 CBA is materially different from that of the 1990-to-1993 CBA.)

"The decision and award of the arbitrator shall be made within (45) days following the [arbitration] hearing and shall be *final and binding on the Employer, the Lodge/Council and the Employee or Employees involved.*" (Emphasis added.)

This language from the subject CBA leaves no doubt that all the parties contracted away their right to take their claims further than arbitration. The CBA clearly states that the arbitrator's decision is *final and binding* on the parties. Plaintiffs are part of a bargaining unit that agreed to be bound by the arbitrator's decision. This attempt to "pull an end around" on the finality of the arbitrator's decision directly contradicts the CBA.

We conclude that, in regard to each of the three subissues, defendants prevail in their contention that the trial court was without subject matter jurisdiction over the instant cause of action. As the trial court lacked jurisdiction to hear the case, this court does not have jurisdiction to review its decision and must dismiss the appeal. *Greer v. Illinois Liquor Control Comm'n*, 185 Ill. App. 3d 219, 221 (1989).

Appeal dismissed.

GEIGER, P.J., and BOWMAN, J., concur.