2019 IL App (1st) 180799
No. 1-18-0799
Opinion filed February 22, 2019

Fourth Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| VIRGINIA GRANT, ALANTRIS MUHAMMAD, CYNTHIA SYLVIA, and SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE ILLINOIS & INDIANA, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) ) | |
| v. | ) ) | |
| JAMES T. DIMAS, in his official capacity as SECRETARY OF THE STATE OF ILLINOIS DEPARTMENT OF HUMAN SERVICES, and MICHAEL M. HOFFMAN, in his official capacity as ACTING DIRECTOR OF THE STATE OF ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, | ) ) ) ) ) ) ) ) | No. 17 CH 12080 |
| Defendants-Appellants. | ) ) ) ) | Honorable David B. Atkins, Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Gordon and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiffs Virginia Grant, Alantris Muhammad, Cynthia Sylvia, and Service Employees International Union Healthcare Illinois and Indiana (SEIU) (collectively plaintiffs) filed an action seeking a writ of *mandamus* to compel defendants, James T. Dimas in his official capacity as the secretary of the Department of Human Services (DHS) and Michael M. Hoffman in his official capacity as the acting director of the State of Illinois Department of Central Management

Services (CMS) (collectively defendants), to implement a $0.48 per hour raise for DHS home services program home care workers passed by the General Assembly in Public Act 100-0023. Pub. Act 100-0023 (eff. July 6, 2017) (amending 20 ILCS 2405/3). Following the enactment of Public Act 100-0023, defendants have refused to implement the wage increase. Defendants filed a motion to dismiss, which the trial court denied. Plaintiffs filed a motion for summary judgment. In response, defendants asked the trial court to reconsider its ruling on the motion to dismiss as opposition to the motion for summary judgment. The trial court granted plaintiffs' motion for summary judgment.

¶ 2    Defendants appeal, arguing that the trial court erred in granting summary judgment because: (1) the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/1 *et seq.* (West Supp. 2017)) and the collective bargaining agreements between the parties take precedence over the wage increase contained in Public Act 100-0023; (2) this case should have been brought before the Labor Relation Board, not the trial court; (3) the trial court should have deferred the matter to the Illinois Public Labor Relations Board (ILRB); and (4) a writ of *mandamus* is unavailable to plaintiffs where the public act at issue was merely directory in nature.

¶ 3    Plaintiffs Grant and Muhammad are personal assistants in the DHS home services program. Plaintiff Sylvia is a licensed practical nurse (LPN) individual maintenance home health worker in the DHS home services program. Plaintiff SEIU is the union and exclusive bargaining representative for personal assistants and individual maintenance home health workers in the DHS home services program.

¶ 4    Prior to Public Act 100-0023, section 3(f) of the Rehabilitation of Person with Disabilities Act (Rehabilitation Act) provided in relevant part:

> "Personal assistants shall be paid at a rate negotiated between the State and an exclusive representative of personal assistants under a collective bargaining agreement. In no case shall the Department pay personal assistants an hourly wage that is less than the federal minimum wage." 20 ILCS 2405/3(f) (West 2016).

¶ 5    Public Act 100-0023 amended section 3(f) to include the following language to the above paragraph contained in the subsection:

> "Within 30 days after the effective date of this amendatory Act of the 100th General Assembly, the hourly wage paid to personal assistants and individual maintenance home health workers shall be increased by $0.48 per hour." Pub. Act. 100-0023 (eff. July 6, 2017).

¶ 6    Also on July 6, 2017, the General Assembly passed Public Act 100-0021, which included an appropriation of $12,695,800 "[f]or costs associated with a rate increase for providers of the Home Services Program." Pub. Act 100-0021 (eff. July 6, 2017).

¶ 7    Section 3(f) of the Rehabilitation Act granted DHS the authority to create the home services program. See 20 ILCS 2405/3(f) (West Supp. 2017). The Illinois Administrative Code defined the home services program as:

> "a State and federally funded program designed to allow Illinois residents, who are at risk of unnecessary or premature institutionalization, to receive necessary care and services in their homes, as opposed to being placed in an institution." 89 Ill. Adm. Code 676.30(j) (eff. Aug. 1, 2017).

¶ 8    SEIU, DHS, and CMS are parties to a CBA, with a term of January 1, 2012 to June 30, 2015. The CBA shall automatically renew itself from year to year, unless notice of termination is served at least 120 days prior to termination.

¶ 9    Under the CBA, personal assistants are hired by a customer to "perform household tasks, shopping or personal care; incidental health care tasks which do not require independent judgment, with the permission of the Customer's physician, Customer, and/or family; and monitoring to ensure the health and safety of the Customer." Maintenance home health provider is defined under the CBA as "an individual hired by a Customer who provides skilled services to said customer as a Certified Nurse's Assistant, Licensed Practical Nurse, Registered Nurse, Occupational Therapist, Physical Therapist or Speech Therapist." While a customer in the home services program has the right to hire, direct, and terminate a personal assistant or maintenance home health provider, the wages for these positions are governed by the CBA as well as a memorandum of understanding between the bargaining parties.

¶ 10    Under the CBA, personal assistants shall be paid $11.55 per hour starting on July 1, 2012, with increases continuing to $13.00 per hour as of December 1, 2014. Plaintiffs Grant and Muhammad have been paid $13 per hour since December 1, 2014. Under the memorandum of understanding, maintenance home health workers are covered under the same terms as personal assistants under the CBA. The memorandum of understanding sets forth that maintenance home health providers receive compensation based on their respective skills. Plaintiff Sylvia, a licensed practical nurse (LPN), received $21 per hour as of January 1, 2014, increasing to $23 per hour as of December 1, 2014. As of December 1, 2014, the range of hourly wages for maintenance home health providers was $16 per hour for a certified nurse's assistant (CNA), $23 for a LPN, and

$29.75 for a registered nurse (RN). The rates for a physical therapist, occupational therapist and speech therapist were negotiated upon hiring.

¶ 11    On July 31, 2015, the SEIU and CMS entered into a tolling agreement, which provided that the parties "agree to negotiate in good faith to reach agreement on a successor collective bargaining agreement covering Personal Assistants and Maintenance Home Health Providers at the earliest possible date." The agreement indicated that "all legal and contractual rights that exist on June 30, 2015" shall remain in effect during the term of this agreement. The tolling agreement also provided that it was to "remain in effect until September 30, 2014 or until impasse is reached whichever comes later."

¶ 12    Defendants did not implement the $0.48 per hour wage increase within 30 days after the effective day of Public Act 100-0023 which was August 5, 2017. On September 6, 2017, plaintiff filed their complaint seeking a writ of *mandamus* to compel defendants to implement the wage increase. In their complaint, plaintiffs also asked the trial court to certify a class of all home services program personal assistants and maintenance home health providers.

¶ 13    In November 2017, defendant filed a motion to dismiss the complaint, asserting the same issues raised on appeal, specifically that plaintiffs' complaint fell within the exclusive jurisdiction of the ILRB; if the trial court has concurrent jurisdiction with the ILRB, then the court should defer the matter to the ILRB; the Labor Act takes precedence over the wage increase in Public Act 100-0023, and plaintiffs failed to allege sufficient facts to obtain a writ of *mandamus*.

¶ 14    In January 2018, the trial court denied defendants' motion to dismiss the complaint. In its memorandum opinion and order, the court rejected defendants' argument that *mandamus* was not appropriate relief and found that the public act was "clearly mandatory because it simply leaves

no room for discretion: it directs a specific ministerial duty (raising hourly wages on employees) to be performed on a specific date, and does not allow the Defendants any independent judgment to exercise in that regard." The court declined to find that the ILRB had exclusive jurisdiction for the case. While the court agreed that it was "beyond dispute" that wages are a collective bargaining matter under the Labor Act, the court found defendants' claim that the case arose from a collective bargaining dispute "tenuous at best." Plaintiffs were not alleging a violation of any CBA, nor alleging an unfair labor practice, but instead they alleged a violation of the public act, "an independent statute which imposes a separate duty on [d]efendants akin to those of the minimum wage law or any other statutorily required work conditions." The court found that the Labor Act "specifically contemplated" a situation to fall outside the ILRB jurisdiction, citing section 7 of the Labor Act (5 ILCS 315/7 (West 2016)). The court concluded that plaintiffs' claim fell outside of the Labor Act and outside the ILRB's exclusive jurisdiction. Based on the same reasoning, the court found in a footnote that because the Labor Act and the public act do not conflict, a consideration of precedence under section 15 of the Labor Act was unnecessary.

¶ 15    In December 2017, plaintiffs filed their motion for summary judgment. In January 2018, defendants filed a joint memorandum in opposition to summary judgment and a motion to reconsider the denial of their motion to dismiss, realleging the same basis in the original motion to dismiss. On March 13, 2018, the trial court entered its memorandum opinion and order granting plaintiffs' motion for summary judgment and denying defendants' motion to reconsider their motion to dismiss.

¶ 16    In its ruling, the trial court observed that defendants had not raised any new arguments from the motion to dismiss and had asserted that the court's ruling was erroneous. The court found no reason to reconsider its conclusions. The court found the public act was "strikingly,

6

clearly mandatory in its language and intent," noting the phrase "shall increase" the wages by a specific amount on a specific date. The court found defendants' argument that "they nevertheless may (or must) bargain indefinitely over current employee wages would render the [public act] entirely meaningless, especially the provision setting an explicit [] deadline." The court found no reason to reconsider its finding that the Labor Act does not conflict with the public act. The trial court found summary judgment for plaintiffs appropriate because the parties agreed on all operative facts and the matter involved only questions of law.

¶ 17    The court denied class certification because the parties agreed at oral argument that certification was unnecessary for relief to all relevant workers. The court ordered defendants to implement the 48-cent wage increase provided in Public Act 100-0023 on or before March 21, 2018. Defendants filed an unopposed motion to stay the judgment pending appeal, which the trial court granted.

¶ 18    This appeal followed in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) with a timely notice of appeal filed on April 12, 2018. Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 19    On appeal, defendants argue that the trial court erred in granting summary judgment in favor of plaintiffs. Specifically, defendants assert that the 48-cent wage increase in Public Act 100-0023 conflicts with the Labor Act and therefore the Labor Act preempts the wage increase; the ILRB has exclusive jurisdiction over plaintiffs' claim for implementation of the wage increase; if the trial court had concurrent jurisdiction with the ILRB, it erred by not deferring to the ILRB; and a writ of *mandamus* is improper in this case.

¶ 20    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the

nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). "A genuine issue of material fact is said to exist when the evidence is sufficient to cause a reasonable jury to return a verdict for the party opposing the entry of summary judgment." *Schuster v. Occidental Fire & Casualty Co. of North America*, 2015 IL App (1st) 140718, ¶ 16. While we do not have cross motions for summary judgment, the motions before the trial court operated in a similar fashion. Defendants' motion to reconsider their motion to dismiss, which also served as their response to summary judgment, asked the trial court to review the merits of the complaint. We note that "where the parties file cross-motions for summary judgment, they invite the court to decide the issues presented as a matter of law." *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339 (2005). Neither party asserts a disputed question of fact, but rather both parties contest the interpretation of relevant statutes related to plaintiffs' action. We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 21    We first consider whether the ILRB had exclusive jurisdiction over plaintiffs' complaint. Defendants contend that plaintiffs' action concerned their wages arising under the Labor Act and the CBAs, and therefore, the ILRB had exclusive jurisdiction over this case. In the alternative, defendants assert that if the trial court had concurrent jurisdiction with the ILRB, then it erred by not deferring to the ILRB. Plaintiffs respond that their claim arises from Public Act 100-0023, not the Labor Act or the CBA, and as such, the ILRB does not have jurisdiction to hear their claim.

¶ 22    In general, the Illinois Constitution vests the circuit courts with original jurisdiction over all justiciable matters, except in certain circumstances where the supreme court has exclusive and

original jurisdiction. Ill. Const. 1970, art. VI, § 9. "However, the legislature may explicitly vest original jurisdiction in an administrative agency when it enacts a comprehensive statutory scheme that creates rights and duties that have no counterpart in common law or equity." *J & J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23. "If the legislature intends for exclusive original jurisdiction to lie with the agency rather than with the circuit courts when it has enacted such a comprehensive statutory scheme, it must make that intention explicit." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15. "[L]egislative intent to divest circuit courts of jurisdiction and to place exclusive original jurisdiction in an administrative agency may be discerned by considering the statute as a whole, with the relevant provisions construed together and not in isolation and with an eye toward the reason for the law, the problems sought to be remedied, and the purposes to be achieved." *Id*. ¶ 16.

¶ 23    The Labor Act sets forth that the state panel of the ILRB "shall have jurisdiction over collective bargaining matters between employee organizations and the State of Illinois ***." 5 ILCS 315/5(a-5) (West 2016). The ILRB also has jurisdiction over unfair labor practice complaints. 5 ILCS 315/5-11 (West 2016).

¶ 24    According to defendants, plaintiffs' claim to implement the 48-cent wage increase falls within matters of collective bargaining and, thus, jurisdiction rests with the ILRB. However, plaintiffs' claim, while concerning wages, does not arise out of the CBA between the parties. Rather, as plaintiffs contend, Public Act 100-0023 forms the basis of plaintiffs' claim.

¶ 25    Defendants rely on two cases for support. In *Gantz v. McHenry County Sheriff's Department Merit Comm'n*, 296 Ill. App. 3d 335 (1998), the plaintiffs' cause of action was premised on the assertion that they, as unmerited deputies, were improperly relegated to a wage scale inferior to that of merited deputies working in the jail as set forth in a CBA. The trial court

9

had dismissed the complaint based on three grounds, which included a lack of subject matter jurisdiction. The Second District Appellate Court found that plaintiff's claims were "tantamount to alleging a breach of the duty of fair representation against the Union in fashioning the subject CBA." *Id*. at 338. In affirming the dismissal, the reviewing court thus concluded that under the Labor Act, the ILRB has jurisdiction over claims arising from CBAs. *Id.* at 340.

¶ 26    In *Foley v. American Federation of State, County, & Municipal Employees, Council 31, Local No. 2258*, 199 Ill. App. 3d 6, 7 (1990), the plaintiffs sought to recover damages for breach of the duty of fair representation by the defendant union and the breach of a CBA by the Illinois Department of Corrections and CMS. The trial court dismissed the complaint for lack of subject matter jurisdiction. On appeal, the reviewing court affirmed, finding that a union's breach of duty of fair representation is an unfair labor practice under the Labor Act, and accordingly, is subject to the Labor Act's remedies and administrative procedures. *Id*. at 10. The court then observed that under the Labor Act, unfair labor practice claims are within the exclusive jurisdiction of the ILRB and an appeal from a decision of the ILRB may be brought in the appellate court. "No provision exists in the [Labor Act] which authorizes public employees to file suit in the circuit court, alleging a union's breach of duty of fair representation." *Id*.

¶ 27    We find these two cases to be distinguishable from the circumstances in the instant case. Defendants have not provided any authority holding that the ILRB possesses exclusive jurisdiction over an action by a public employee concerning a claim separate from the CBA involving a statute outside the Labor Act.

¶ 28    In contrast, plaintiffs rely on cases in which the trial court was found to have jurisdiction in actions by public employees against their employer that arose from a separate public act or statute. In *Local 1894, American Federation of State, County & Municipal Employees, AFL-CIO*

*v. Holsapple*, 201 Ill. App. 3d 1040, 1042-43 (1990), the plaintiffs filed a complaint for declaratory judgment and injunctive relief against the defendant county sheriff, alleging a violation of a statute that authorized "a county sheriff to employ auxiliary deputies, but prohibits the use of such deputies to perform the duties of regular deputy sheriffs." The defendant contended that the plaintiffs failed to exhaust administrative remedies before seeking injunctive relief. In his motion to dismiss, the defendant included the parties' CBA, but the CBA did not include the subject at issue in the plaintiffs' complaint. For this reason, the reviewing court found that the case was not subject to the arbitration requirements set forth in the Labor Act. *Id*. at 1048-49. The court held that case did not fall within the Labor Act and jurisdiction was proper in the trial court. *Id*. at 1049.

¶ 29    In *Semmens v. Board of Education of Pontiac Community Consolidated School District No. 429, Livingston County*, 190 Ill. App. 3d 174, 176 (1989), the plaintiff teachers filed an action seeking an injunction and damages against the school district arising from a violation of the School Code (Ill.Rev.Stat.1985, ch. 122, par. 24-9, now 105 ILCS 5/24-9 (West 2016)) for failing to provide the plaintiffs with a lunch period. The defendant filed a motion to dismiss asserting that the trial court lacked jurisdiction because the case arose under the Illinois Educational Labor Relations Act (Education Labor Act) and should have been brought before the Illinois Educational Labor Relations Board (IELRB), which motion the trial court granted. On appeal, the reviewing court reversed, finding that the plaintiffs' complaint did not reference a CBA requiring arbitration or a grievance procedure. *Id*. at 179. The court further held that the implementation of a working condition not part of the CBA did not bring the Education Labor Act into play. *Id*. at 180-81.

¶ 30    We find the instant case to be more analogous to the cases cited by plaintiffs where the enforcement of the wage increase provided in Public Act 100-0023 exists separate from any CBA. As previously discussed, the exclusive jurisdiction of the ILRB is limited to the grievances set forth in the Labor Act and none of those bases are present here. Plaintiffs' complaint does not arise from terms of the CBA nor does it state a claim based on an unfair labor practice. Accordingly, we conclude that the trial court properly held that it had jurisdiction to consider the merits of plaintiffs' complaint.

¶ 31    Defendants raise an alternative argument that the trial court had concurrent jurisdiction with the ILRB and it erred by not deferring to the ILRB under the doctrine of primary jurisdiction. According to defendants, the trial court should have permitted the ILRB to consider the case because the ILRB has "specialized expertise" and such expertise should have used to consider the issues of collective bargaining raised in plaintiffs' complaint. Plaintiffs maintain that since the ILRB lacks jurisdiction over plaintiffs' claim, there was no administrative jurisdiction for the trial court to defer.

¶ 32    "The doctrine of primary jurisdiction is ' "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." ' " *Employers Mutual Companies v. Skilling*, 163 Ill. 2d 284, 288 (1994) (quoting *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 444 (1986), quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63 (1956)). "Under this doctrine, a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards." *Id*. at 288-89.

¶ 33    The supreme court in *Skilling* observed "[i]t is the particular province of the courts to resolve questions of law such as the one presented in the instant declaratory judgment case.

Administrative agencies are given wide latitude in resolving factual issues but not in resolving matters of law." *Id*. at 289. There, the supreme court considered whether an insurance dispute related to a workers' compensation claim should have been deferred from the trial court to the Industrial Commission. The court concluded that jurisdiction was properly in the trial court because the declaratory judgment action raised a question of law. *Id*.

¶ 34    We point out that while defendants cite several cases recognizing that Illinois courts give deference to an agency's interpretation of a statute it is empowered to apply, none of the cited cases support their contention that the trial court erred in this case by not deferring jurisdiction to the ILRB. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98 (1992) (reviewing an agency's findings under manifest weight of the evidence standard); *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 495-96 (1988) (discussing judicial review of an administrative action); *Massa v. Department of Registration & Education*, 116 Ill 2d 376, 388 (1987) (reviewing an administrative agency's finding).  Further, defendant relies on two cases for the general principle that Illinois courts have recognized the expertise of the ILRB for labor issues, but neither case involved deferring jurisdiction to the ILRB. See *Office of Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296, 306 (1995) (finding that agency expertise was not necessary when considering a question of law); *Central City Education Ass'n, IEA/NEA v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523 (1992) (considering whether topics are subject to bargaining under the Labor Act). Illinois Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). It is well-settled that a contention that is supported by some argument but does not cite

any authority does not satisfy the requirements of Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on appeal. *Wasleff v. Dever*, 194 Ill. App. 3d 147, 155-56 (1990). Arguments unsupported by citation to legal authority are considered as forfeited on appeal. *Id*. Defendants have not cited any authority relevant to the question of whether the trial court should have deferred jurisdiction to the ILRB. Accordingly, we find this argument forfeited. Moreover, as in *Skilling*, we note that the appeal does not involve any factual issues, but only questions of law. Thus, jurisdiction was proper in the trial court.

¶ 35    Next, we consider defendants' argument that the Labor Act and CBAs conflict with the 48-cent wage increase and take precedence over Public Act 100-0023. Specifically, defendants contend that the wage increase from Public Act 100-0023 conflicts with their duty to maintain the status quo on wages under the CBA. According to defendants, implementing the 48-cent wage increase would disrupt the status quo by paying different wages than those set forth in the CBA. Defendants assert that under section 15 of the Labor Act, any such conflict would be resolved in favor of the Labor Act and the CBA because both take precedence over the public act. 5 ILCS 315/15 (West 2016). Section 15(a) states, "[i]n case of any conflict between the provisions of this Act and any other law ***, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15(a) (West 2016). Plaintiffs respond that the wage increase is exempted from collective bargaining and no conflict exists between bargaining under the Labor Act and the 48-cent wage increase in Public Act 100-0023. According to plaintiffs, the question of precedence under section 15 of the Labor Act only arises if a conflict exists, and no such conflict exists here. Thus, we must first determine if a conflict exists between the Labor Act and Public Act 100-0023 such that application of section 15 of the Labor Act is triggered.

¶ 36    Under section 7 of the Labor Act, a public employer and the exclusive representative have the authority and duty to bargain collectively, which includes "to negotiate in good faith with respect to wages, hours, and other conditions of employment." 5 ILCS 315/7 (West 2016). Section 7 includes an accommodation provision:

> "The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." 5 ILCS 315/7 (West 2016).

¶ 37    Defendants argue that section 7 does not exclude the 48-cent wage increase in Public Act 100-0023 from collective bargaining. In response, plaintiffs maintain that the accommodation provision in section 7 plainly exempts the wage increase from the parties' duty to collective bargaining and refers to the Illinois Supreme Court in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353 (1988), for support.

¶ 38    In that case, the defendant union filed an unfair labor practice complaint against the plaintiff City of Decatur based on the city's refusal to bargain during the negotiations for a new CBA over a union proposal that would permit employees to submit disciplinary grievances to arbitration. The city had refused to bargain over the proposal on the ground that it had no duty to bargain over disciplinary matters that fell within the scope of its municipal civil service system, which had been adopted in a referendum vote pursuant to the Illinois Municipal Code. *Id*. at 357.

15

The city acknowledged that the union's proposal would be a mandatory subject of bargaining absent the accommodation provision of section 7 and the city's adoption of civil service provisions. The hearing officer recommended that the city be required to bargain over the union's proposal, and the State Labor Relations Board (State Board) adopted the recommendation. The appellate court reversed the State Board's order, finding that the city was not required to bargain.

¶ 39    On appeal, the supreme court found that the dispute centered on section 7 of the Labor Act. The court found the recommended decision adopted by the State Board "did not give full effect to the language in section 7 of the [Labor] Act." *Id*. at 361. The court rejected the interpretation of section 7 by the State Board as such view would "effectively eliminate[] any potential conflict between another statute and the bargaining duty prescribed by the [Labor] Act; under that interpretation, no statute would ever limit the duty to bargain." *Id*. The supreme court opined:

> "Section 7 requires the parties to bargain over mandatory subjects that are 'not
> specifically provided for in any other law or not specifically in violation of the
> provisions of any law.' This indicates that the bargaining duty may in fact be
> limited by a law that specifically provides for, or prohibits, a matter that would
> otherwise be a mandatory subject of bargaining. In addition, section 7 provides
> that if another statute 'pertains, in part,' to a mandatory subject, the other law
> does not limit the duty to bargain over clauses that would 'supplement,
> implement, or relate to the effect of such provisions in other laws.' Under that
> provision, statutes that pertain in part to a mandatory subject do not have
> preemptive effect, and the parties remain obligated to bargain over supplementary

16

clauses. Contrary to the interpretation adopted by the State Board in this case, the accommodation provision in section 7 allows for laws that will limit the duty to bargain." *Id*. at 361-62.

¶ 40 In considering whether the civil services provision adopted by the city were exempt from bargaining, the supreme court reasoned how a minimum wage law was an example of a statute from another subject would impact the duty to bargain.

"As the language of section 7 indicates, the mere existence of a statute on a subject does not, without more, remove that subject from the scope of the bargaining duty. For example, one type of statute that would not relieve an employer of the duty to bargain over an otherwise mandatory subject of bargaining would be a provision establishing a minimum level of benefit, such as a minimum wage law or minimum salary law. In that case, wages would remain a mandatory subject of bargaining, and the employees' bargaining representative would be free to insist on a level higher—but not lower—than that required by law." *Id*. at 364-65.

¶ 41 After considering the statute at issue in the case, the supreme court concluded that, "[g]iven the purpose of the [Labor] Act, the nature of that part of the civil service system at issue here, and the legislature's express preference for arbitration as a method for resolving disputes during the life of a labor contract," the city had a duty to bargain with the union over its proposal to arbitrate grievances and reinstated the State Board's decision. *Id*. at 366. The court clarified that its "ruling does not mean that the city must agree to the union's proposal on this, or any other, subject. The duty to bargain collectively does not require a party to reach a particular

17

agreement or make a particular concession; the parties may pursue their views to impasse." *Id*. at 367.

¶ 42     We find the supreme court's reasoning in *City of Decatur* regarding section 7 of the Labor Act to be instructive. The facts of this case fall squarely within the example provided by the supreme court of a statute that would not relieve the duty to bargain, but instead sets a minimum wage for the personal assistants and maintenance home health workers. The 48-cent wage increase in Public Act 100-0023 operates as a minimum wage law because its effect is to set the relevant hourly wage at a minimum rate higher by 48 cents. Personal assistants would then make $13.48 per hour and maintenance home health workers would make between $16.48 to $30.23 per hour, not including the negotiated rates for physical, occupational, and speech therapists. As the court reasoned in *City of Decatur*, the parties would still be free to bargain over wages, but the hourly rates could not be lower than those set by the public act. Therefore, we find no conflict between Public Act 100-0023 and section 7 of the Labor Act. The duty to bargain over wages remains for both parties going forward, and the implementation of a wage increase does not alter that duty under the Labor Act.

¶ 43     Defendants do not discuss *City of Decatur* in their briefs. Rather, defendants assert that Illinois courts have created a three factor test to determine if section 7 exempts a matter from collective bargaining. According to defendants, the three factors are: "(1) whether the other law is mandatory or directory; (2) whether the public employer subject to the other law has the unilateral ability to alter the statute that provides for the other law; and (3) whether the legislative intent demonstrates the legislature's preference for bargaining." However, in setting forth the test, defendants offer a general "see" citation to *Nall v. International Ass'n of Machinists & Aerospace Workers, AFL-CIO, Local Lodge 822, Dist. 123*, 307 Ill. App. 3d 1005, 1008-09

(citing *City of Decatur*, 122 Ill. 2d at 365). The citation to *Nall* refers to the Fourth District's discussion of *City of Decatur*. We review this case to ascertain the basis of this test set forth by defendants.

¶ 44     Similar to the circumstances in *City of Decatur*, in *Nall*, a county sheriff and the county sheriff's merit commission filed a declaratory judgment action seeking a declaration that they had no obligation to bargain with a public union representing patrol officers, deputy sheriffs, and other designated employees regarding the commission's disciplinary and promotional procedures. *Id*. at 1006. During the parties' negotiation for a CBA, the union sought to include provisions allowing for arbitration over disciplinary and promotional issues, but the sheriff refused to bargain on these issues based on section 3-8002 of the Sheriff's Merit System Law (Merit Law) (55 ILCS 5/3-8002 (West 1996)). *Id*. at 1007. The sheriff asserted that section 3-8002 of the Merit Law required the county to adopt disciplinary and promotion procedures in accordance with the statute. *Id*. The union moved to dismiss the sheriff's complaint, which the trial court granted.

¶ 45     On appeal, the sheriff contended that because the Merit Law mandated the county to adopt the disciplinary and promotional procedures set forth by the General Assembly and the county could not amend or alter those provisions as it was not a home rule unit of government, they could not bargain over these issues. The union argued that the statute did not state its provisions were the exclusive means to review these issues and public policy favored arbitration. *Id*. at 1007-08. The Fourth District discussed the decision in *City of Decatur* and described the analysis in that case as having three factors.

>          "In reaching its conclusion, the court considered the following three
>          factors: (1) Illinois' public policy granting full freedom to bargain over wages,

hours, and other conditions of employment; (2) the optional nature of the civil service system and the city's authority to unilaterally alter or amend the terms; and (3) the legislature's express preference for arbitration to resolve labor disputes." *Id.* at 1009.

¶ 46    In setting forth these facts, the *Nall* court also cited the supreme court's discussion of *City of Decatur* in *American Federation of State, County & Municipal Employees, Council 31, AFL-CIO v. County of Cook*, 145 Ill. 2d 475, 482 (1991). There, the supreme court described the holding in *City of Decatur* in three points:

> "The court so held in reliance upon: (1) the public policy of the State ' "to grant public employees full freedom of association, self-organization, and designation of representatives *** for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." ' (*City of Decatur*, 122 Ill. 2d at 364, quoting Ill. Rev. Stat.1985, ch. 48, par. 1602); (2) the optional, rather than mandatory, nature of the civil service system adopted by the city and the city's power, as a home rule authority, to unilaterally alter, amend or eliminate any of the terms of that system (*City of Decatur*, 122 Ill. 2d at 365-66, citing Ill. Rev. Stat.1985, ch. 24, par. 10-1-43); and (3) the legislature's preference for arbitration as a means of dispute resolution, as expressed in section 8 of the Act (*City of Decatur*, 122 Ill. 2d at 366)." *County of Cook*, 145 Ill. 2d at 482.

¶ 47    In *County of Cook*, the supreme court considered whether the county was required to bargain with the union over the application of a civil service testing requirement to postprobationary employees who were hired before the establishment of the requirement based on statutes in the Counties Code (Ill. Rev. Stat. 1989, ch. 34, par. 3-14013, 3-14016) *Id*. at 477.

After considering *City of Decatur*, the supreme court held that the county was obligated to bargain with the union over the testing requirement for the employees hired prior to its enactment. *Id*. at 482.

¶ 48    This summary of *City of Decatur* appears to be the basis for what the *Nall* court termed as the "three factors." *Nall*, 307 Ill. App. 3d at 1009. The *Nall* court then discussed the *City of Decatur* court's analysis under the these factors, noting the same "three-pronged test" was used in an earlier Fourth District decision, *Board of Governors of State Colleges & Universities on Behalf of Northeastern Illinois University (BOG) v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463 (1988). *Id*.

¶ 49    In that case, the BOG filed a discharge notice against an employee and the employee filed a grievance, but the BOG refused the grievance, stating the only recourse was a hearing before the merit board. The employee's union subsequently filed an unfair labor practice action against the BOG before the IELRB. The hearing officer found the BOG and the union had agreed to arbitrate discharges and the BOG had violated the IELRA, which the IELRB adopted. On appeal, the BOG challenged whether the bargaining agreement mandated arbitration of discharges. *BOG*, 170 Ill. App. 3d at 466-70. The reviewing court considered *City of Decatur* and summarized the supreme court's reasoning as, "under the Illinois Public Labor Relations Act parties are required to bargain over mandatory subjects which were not specifically provided for in other laws, civil service provisions may be supplemented, and in determining whether civil service provision override the bargaining duty, it is appropriate to consider the nature of the civil service law." *Id*. at 475-76. The reviewing court concluded that the BOG committed an unfair labor practice by failing to arbitrate the employee's grievance, but affirmed the merit board's decision in the

interest of judicial economy because the employee elected to follow the civil servant procedures. *Id*. at 483-84.

¶ 50 The Fourth District in *Nall* distinguished both *BOG* and *City of Decatur* from the circumstances in its case. The reviewing court found the disciplinary and promotional procedures in the Merit Law were mandatory based on use of the word "shall." *Id*. at 1010. The court also concluded that the county was not a home rule of government and does not have ability to control which portions of the Merit Law to adopt, alter, or amend. *Id*. The court pointed out that the Merit Law was amended after the Labor Act's enactment, but the legislature did not change the mandatory language. The court concluded that the sheriff could not bargain over the disciplinary and promotional procedures. *Id*. at 1011.

¶ 51 We find one significant difference between the above authority and the circumstances before this court. In each of the above cases, the dispute arose because a union sought to bargain over provisions setting arbitration procedures related to discipline or promotions and the public employer refused to bargain on the topic based on a statute outside the Labor Act. Here, neither party is seeking to bargain over the Public Act, rather plaintiffs seek to have defendants implement it. Further, notably, the supreme court did not set forth a test to follow in reviewing an outside statute in light of section 7 of the Labor Act in either *City of Decatur* or *County of Cook*. The Fourth District cases describing the factors as a test only did so generally as those courts followed the analysis set forth in *City of Decatur* because each faced a similar issue under the civil service system, but that is not the case here. Defendants have generally cited the basis for the factors, but offered no analysis in the origin of these factors and then set forth an altered version to suit their claim here. Therefore, we decline to review Public Act 100-0023 under the factors suggested by defendants.

¶ 52    Since we have found no conflict between Public Act 100-0023 and the Labor Act, we need not to reach defendants' argument that the CBA and Labor Act take precedence pursuant to section 15 of the Labor Act. As pointed out above, section 15(a) states, "[i]n case of any conflict between the provisions of this Act and any other law ***, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15(a) (West 2016). By its own language, section 15 is applicable only when a conflict arises between the Labor Act and another law. We have concluded no such conflict is present in this case, and therefore, we need not consider precedence in this case.

¶ 53    We also find defendants' reliance on the case, *Illinois Troopers Lodge No. 41 v. Illinois Labor Relations Board*, 2018 IL App (1st) 171382, ¶ 37, to be misplaced. In their briefs, defendants cite to the police union's position in the then-pending appellate case as being incompatible with SEIU's arguments here. In that case, the police union and the State of Illinois Department of Central Management Services (the State) were involved in negotiating a new CBA. *Id*. ¶ 7. Throughout the process the State had not objected to including health insurance as a mandatory topic of bargaining. The negotiations reached an impasse and moved to arbitration, and both parties continued to include health insurance in the process. After the deadline to raise an objection had passed, the State, for the first time, contended that a public act amending section 15 of the Labor Act removed health insurance from mandatory bargaining. *Id*. ¶¶ 8-9. The State eventually filed an unfair labor practice charge against the police union on this topic. *Id*. ¶ 9. After a hearing, the hearing officer dismissed the unfair labor charge in a lengthy decision. The ILRB adopted the hearing officer's findings, specifically holding that the State did not timely object to consideration of health insurance in the arbitration. *Id*. ¶¶ 15-20. On appeal, the reviewing court concluded that the discussion by the ILRB related to the public act relied on

by the State was *dicta*, and that the ILRB's holding was that the State forfeited its claim. *Id*. ¶ 34. The court concluded that it was unable to find that the ILRB's decision to dismiss the unfair labor charge was clearly erroneous. *Id*. ¶ 39.

> "After leading the union down a costly primrose path for months (if not years) by bargaining over the troopers' health insurance to the point of exhaustion, the State pulled the rug out from under the union by formally objecting to bargaining over health insurance at all. When it did so, the deadline for objections had long passed, and the impasse had been fully submitted to the arbitration panel." *Id*.

¶ 54 Having found that the State acquiesced to bargaining on health insurance by not raising a timely objection, the reviewing court found that there was "no need to resolve the parties' dispute regarding the interpretation of the Labor Relations Act and the State Employees Health Insurance Act and determine which, if any, elements of health insurance are properly subjects of mandatory or permissive bargaining." *Id*. ¶ 40.

¶ 55 Since the reviewing court never reached the question related to the Labor Act and mandatory bargaining, *Illinois Troopers Lodge* has no bearing on the issue before this court. Moreover, we have already concluded that the question of precedence under section 15 of the Labor Act has not been triggered in this case.

¶ 56 We find further support for our conclusion that the duty to bargain under the Labor Act does not conflict with Public Act 100-0023 from a subsequent public act passed by the General Assembly. The same paragraph at issue here in section 3(f) of the Rehabilitation act was amended again by the General Assembly. Public Act 100-0587 amended that section as follows:

> "Except as otherwise provided in this paragraph, personal ~~Personal~~ assistants shall be paid at rate negotiated between the State and an exclusive representative of

personal assistants under a collective bargaining agreement. In no case shall the Department pay personal assistants an hourly wage that is less than the federal minimum wage. Within 30 days after <u>July 6, 2017 (</u>the effective date of <u>Public Act 100-23)</u> ~~this amendatory Act of the 100th General Assembly~~, the hourly wage paid to personal assistants and individual maintenance home health workers shall be increased by $0.48 per hour." Pub. Act 100-0587 (amending 20 ILCS 2405/3(f) (eff. June 4, 2018).

¶ 57    " 'A subsequent amendment to a statute may be an appropriate source for discerning legislative intent.' " *K. Miller Const. Co., Inc. v. McGinnis*, 238 Ill. 2d 284, 298 (2010) (quoting *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002)). "When we consider the meaning of a statutory amendment, we consider the circumstances surrounding the enactment, as well as the need for the amendment and the purpose it serves." *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 32 (2003). "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Oswald v. Hamer*, 2018 IL 122203, ¶ 10.

¶ 58    The amendment to section 3(f) of the Rehabilitation Act further demonstrates the General Assembly's intent that the wage increase is not subject to the CBA, but rather the increase is a minimum wage law apart from that agreement. The amendment specifically stated that except for that paragraph in which the wage increase was enacted, the rate of pay shall be negotiated under a CBA. The General Assembly's amendment clarified their intent that the wage increase operate as a minimum wage separate from the CBA. And as we previously discussed, this conclusion does not exclude wages as a mandatory subject of collective bargaining, instead it sets the floor for wages. The parties can negotiate rates of pay higher than that established in this statute.

¶ 59 Finally, we turn to whether a writ of *mandamus* was appropriate relief granted to plaintiffs in this case. "A writ of *mandamus* is a judicial order used to compel a public official to perform a nondiscretionary, ministerial duty." *Gassman v. Clerk of the Circuit Court of Cook County*, 2017 IL App (1st) 151738, ¶ 13. "*Mandamus* is appropriate if plaintiff demonstrates that (1) he or she has a clear and affirmative right to relief, (2) the public official has a clear duty to act, and (3) the public official has clear authority to comply with the writ." *Id*.

¶ 60 As set forth previously, Public Act 100-0023 amended section 3(f) of the Rehabilitation Act (20 ILCS 2405/3(f) (West Supp. 2017)) to include the following language to a paragraph discussing payment for personal assistants under the home services program:

> "Within 30 days after the effective date of this amendatory Act of the 100th General Assembly, the hourly wage paid to personal assistants and individual maintenance home health workers *shall* be increased by $0.48 per hour."
>
> (Emphasis added.) Pub. Act. 100-0023, § 30-20 (eff. July 6, 2017).

¶ 61 In addition to the enactment of the wage increase, the General Assembly also specifically appropriated funding to pay for the increase. In Public Act 100-0021, DHS was appropriated $12,695,800 for costs associated with the wage increase to providers of the home services fund. Pub. Act. 100-0021, § 45 (eff. July 6, 2017). As plaintiffs note, implementation of statutory salary increases has been sought through a writ of *mandamus*. See *People ex rel. American Federation of State, County & Municipal Employees v. Walker*, 61 Ill. 2d 112, 119 (1975) (directing circuit court to compel public official to implement statutory salary increase); *Illinois County Treasurers' Association v. Hamer*, 2014 IL App (4th) 130286, ¶ 47 (granting summary judgment in favor of association representing county treasurers seeking payment of statutory stipends).

26

¶ 62 Given our finding above regarding the legislature's passage of a wage increase as well as funding to pay for the increase, we find that plaintiffs have shown a clear, affirmative right to the wage increase and have satisfied the first factor required for *mandamus* relief.

¶ 63 Next, we turn to whether defendants have a clear duty to implement the wage increase. To do so, a question of statutory interpretation has been raised. The cardinal rule in construing a statute, to which all others are subordinate, is to ascertain and give effect to the intent of the legislature. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). To determine legislative intent, we turn to the language of the statute, which is the best indicator of its intent. *Id*. We must give the statutory language its "plain, ordinary, and popularly understood meaning," and "[w]here the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Id*. "[A]ll words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation." *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Id*.

¶ 64 The text of Public Act 100-0023 uses the term "shall" for the 48-cent wage increase. Generally, the use of the term "shall" indicates a mandatory intent. *Emerald Casino*, 346 Ill. App. 3d at 27. "However, the word's meaning is not fixed or inflexible, and courts sometimes interpret it as directory." *Id.* "The meaning of 'shall' is 'grounded on the "nature, objects, and the consequences which would result from construing it one way or another." ' " *Id*. (quoting *Andrews v. Foxworthy*, 71 Ill. 2d 13, 21 (1978), quoting *Carrigan v. Illinois Liquor Control Commission*, 19 Ill. 2d 230, 233 (1960)). Stated another way, "when a statute prescribes the performance of an act by a public official or a public body, 'the question of whether it is mandatory or directory depends on its purpose.' " *Id*. (quoting *Andrews*, 71 Ill. 2d at 21). "[T]he

mandatory/directory question ' "simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." ' " *In re M.I.*, 2013 IL 113776, ¶ 16 (quoting *People v. Robinson*, 217 Ill. 2d 43, 51-52 (2005), quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (1977)).

¶ 65     "With respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory." *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009). "This presumption is overcome under either of two conditions. A provision is mandatory under this dichotomy when there is negative language prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading." *Id.*

¶ 66     Here, defendants contend that the use of the word "shall" in the amendment indicates that the General Assembly intended for the wage increase to be directory rather than mandatory because no consequences have been set forth for noncompliance. See *Cebertowicz v. Madigan*, 2016 IL App (4th) 140917, ¶ 17. It is undisputed that Public Act 100-0023 does not include any language indicating a consequence for noncompliance, but our inquiry does not end there. The second condition to overcome the presumption of a directory intent is relevant in this case, but defendants do not address this condition on appeal.

¶ 67     "It has long been held that 'statutory requisitions' directed to government officials ' "designed to secure order, system and dispatch in proceedings" ' are usually directory rather than mandatory, but if they ' "are intended for the protection of the citizen, *** and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory." ' " *Robinson*, 217 Ill. 2d at 56 (quoting *People v. Jennings*, 3 Ill. 2d

125, 127 (1954), quoting *French v. Edwards*, 80 U.S. 506, 511 (1871)). "In other words, commands to government officials regarding procedure are usually directory, but there is an exception when the official's failure to follow the procedure will 'generally' injure the right the procedure was designed to protect." *Id*.

¶ 68    Defendants rely on *Cebertowicz* and *Delvillar* to support their position that the public act was merely directory because no consequences for failure to comply are present. In *Delvillar*, the defendant challenged as mandatory an admonition provided in the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2006)) regarding possible immigration consequences to noncitizens following a guilty plea. *Delvillar*, 235 Ill. 2d at 513-14. In considering whether the statute at issue was mandatory, the supreme court found that neither condition indicating a mandatory intent as quoted above were present. Specifically, the court concluded that no negative consequence flowed from noncompliance and that the right the legislature intended to protect would not be injured. *Id*. at 517-18. Defendants, in citing *Delvillar*, focus solely on the lack of consequences, but do not discuss the second basis for finding a statute to be mandatory. Similarly the reviewing court in *Cebertowicz* did not reach the question of whether the right the legislature intended to protect would be injured. There, the court reviewed whether a statute setting forth investigation procedures for violations of civil rights and discrimination by the Attorney General was entitled to *mandamus*. *Cebertowicz*, 2016 IL App (4th) 140917, ¶ 13. The court concluded that the plaintiff failed to demonstrate two of the three requirements for *mandamus*. *Id*. ¶ 21. The court found the statute had a directory intent because no negative consequence flowed from noncompliance and that the plaintiff failed to show he was entitled to the relief requested because the attorney general does not represent individuals, but instead the

people of the State of Illinois as a whole. *Id*. ¶¶ 17-20. We find the circumstances of both cases to be distinguishable from the present case.

¶ 69     Here, the procedure at issue was the implementation of the 48-cent wage increase for the personal assistants and maintenance home health providers under the home services program. The failure of defendants to implement the wage increase has injured the rights of plaintiffs and others similarly situated. This result necessitates a mandatory interpretation of Public Act 100-0023. If defendants had the discretion to implement the wage increase under a directory reading, then the amendment in Public Act 100-0023 would lose all meaning. Because plaintiffs' right to a wage increase provided by Public Act 100-0023 would be injured under a directory reading, we conclude that the provision at issue was intended to be given a mandatory meaning. Therefore, plaintiffs have established that defendants had a clear duty to act under the second factor for *mandamus* relief.

¶ 70     The third factor is whether defendants have clear authority to comply with the writ of *mandamus*. In their opening brief, defendants failed to address this factor. However, defendants raised a brief discussion in their reply brief. Under Supreme Court Rule 341(h)(7), "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 33735, ¶ 55 (citing *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1073 (1999)). Since this argument was first raised in defendants' reply brief, it has been forfeited. Moreover, as plaintiffs assert, defendants have clear authority to comply with a writ. The General Assembly appropriated the funds to implement the wage increase through fiscal year 2018 under Public Act 100-0021. Thus, defendants, by virtue of their positions with DHS and CMS, have clear authority to comply with a writ of *mandamus* to implement a wage increase

with funds allocated for that purpose. Since all three factors have been satisfied, we hold that *mandamus* was appropriately granted as relief for plaintiffs in this case.

¶ 71 Based on the foregoing reasons, summary judgment was properly granted to plaintiffs by the trial court. Therefore, we affirm the decision of the circuit court of Cook County.

¶ 72 Affirmed.