2020 IL App (1st) 190598-U

No. 1-19-0598

Order filed January 10, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KATHY DOWDELL, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, | ) | Charge No. 2015 CP 1697 |
| THE DEPARMENT OF HUMAN RIGHTS, | ) | |
| MR. RONALD TABOR, MR. NOVY, and MAZ | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The decision of the Human Rights Commission sustaining the Department of Human Rights's dismissal of petitioner's charge of race and sex discrimination for lack of substantial evidence is affirmed when petitioner's brief is insufficient to ascertain her claims and her arguments rest on matters *de hors* the record and are forfeited.

¶ 2       Petitioner Kathy Dowdell appeals *pro se* from a final order entered by the Human Rights Commission (Commission) sustaining the Department of Human Rights's (Department) dismissal of her charge of race and sex discrimination by respondents Maz Management, Inc., Ronald Tabor, and Mr. Novy.[1] The Commission concluded that the Department properly dismissed petitioner's discrimination charge for lack of substantial evidence. On appeal, petitioner asks this court to order Maz Management, Inc. (respondent), to submit surveillance footage to "show the truth" of her allegations and provide her with a written apology. We affirm.

¶ 3       In December 2014, petitioner filed a charge of discrimination with the Department following a December 14, 2014 incident at B/P Earth Market. In the charge, petitioner alleged that after prepaying for her gas, she went to the restroom and then looked at a display of hats. She did not buy a hat and went to her vehicle. As she left, she was stopped by a Caucasian security officer, Novy, who stated that the clerk, Ron, said she put something in her purse.[2] Petitioner went back inside to let Novy look in her purse. Once inside, petitioner noticed a line of Caucasian customers "staring" at her, and she began to feel sick. She removed items from her purse until Novy told her to stop and said that he believed her. Petitioner then asked Ron for the manager's and owner's names, but was ignored. Petitioner went to fuel her vehicle but had problems doing so. When petitioner went inside to tell Ron that the pump was not working, a police officer approached her and asked what happened.

¶ 4       Petitioner told the officer that she was "falsely accused" of putting something in her purse. The officer asked for her identification and if he could look in her purse to prove the clerk wrong.

---

[1] Novy's first name is not included in the record on appeal.
[2] Although petitioner does not identify him as such, we presume "Ron" is Ronald Tabor.

Petitioner replied that Novy had already checked her purse, but Novy said "[n]ot really." Petitioner told the officer that the store security camera "would tell the truth," and again emptied her purse while crying. The officer said "OK!" and walked away. After petitioner fueled her vehicle, the officer gave her his card and said he was just "doing his job." Petitioner stated that she was the only person singled out and that she "was targeted and accused." Petitioner identified herself as a "Lady of Color."

¶ 5    A Department investigator investigated petitioner's claim and on August 4, 2015, issued a report. The report noted petitioner's allegations, as stated above, and details the evidence presented by both parties during the Department's investigation.

¶ 6    Under petitioner's "Evidence," the report essentially restated the facts alleged in petitioner's charge as to her confrontation with Novy. The report added that petitioner said that she had frequented respondent's location on numerous occasions, and that the clerk, Ron, had always been polite. Petitioner stated that Ron must have told Novy that he thought she had stolen something.

¶ 7    The report also detailed that as petitioner went back inside, she saw a Frankfort police officer and was "flabbergasted" and "insulted" that respondent had called the police. When petitioner reentered the store, the officer, who identified himself as Officer Richards, asked her whether there was a problem. Petitioner replied that she had been falsely accused of stealing by Ron. Richards requested her drivers' license, which she provided, and then stated, "Why don't we take a look into your purse and prove him [Ron] wrong?" Although petitioner stated that the security guard had already searched her purse, when the officer asked him, Novy replied "Not really." Petitioner told the officer that Novy was being untruthful, that her purse had been searched,

and that respondent's security cameras would prove it. Petitioner began to empty her purse, but Richards said, "Ok," and walked away. Petitioner refilled her purse and then went outside to fuel her vehicle. When she went inside to get her change, she met Richards and asked him for his business card. Richards complied and stated that he was just doing his job. Petitioner stated that incident left her embarrassed and humiliated. She was the only black person and the only woman in the store. Petitioner further stated that Ron, Novy, and Richards were white men. Petitioner concluded that she was treated in that manner because of her race and sex.

¶ 8    The report further indicated that petitioner produced a copy of her Freedom of Information Act ("FOIA") request to the Frankfort Police Department, which indicated that she requested information on "Case Number 59958." Her copy of the Frankfort Police Department's incident report stated that an incident involving petitioner and respondent's employee, Ron, took place at "BP Amoco Frankfort." The incident report includes various redactions, and contains the following narratives:

> "[Redacted] [Person A] [was] advised that a disturbance was taking place at BP in regards to customer possibly taking merchandise. Ron [the] store employee advised that customer may have taken [a] hat from stand, made contact with customer, she cooperated by emptying contents of her purse. No hats found in bag. Customer irate and taking video during duration of contact. Employee unable to check security cameras. Advised store employee to check cameras when manager comes in to determine if any items were in fact taken. Advised employee that a report could be filed at that time. Nothing further 0006."

> [Redacted] [Person B]: While conducting a foot patrol inside the store, I was approached by the cashier regarding a customer that had just exited the store and the

customer may have taken a hat from a merchandise rack near the exit door and put it in her purse. I contacted the customer at her car, advised her of the situation, and asked her to return to the store. The customer obliged and returned inside the store but was visibly upset and began video recording on her cell phone. I contacted 316 [Officer Richards] regarding a disturbance at the location, and stood by for his arrival. 316 arrived and handled the situation. No further."

¶ 9     Carmen Gonzales, petitioner's roommate, stated that they had visited respondent's location a half-dozen times without incident. She was not with petitioner during the December 14, 2014 incident. However, when petitioner got home that evening, petitioner was "very humiliated and distraught," and felt that she had been the victim of racial discrimination.

¶ 10    Respondent's president, Abdul Basit, stated that his business is a gas station/convenience store. He values each customer and stated it is imperative that each customer be treated courteously so that he or she returns. No customers are ever turned away based on race, gender, or any other characteristic. Basit operates two gas station/convenience stores and spends time at each location every day. On December 15, 2014, the manager of the Frankfort location advised him of an unusual incident the previous day. Specifically, a Village of Frankfort employee who appeared to be a security or law enforcement official asked a customer whether she had taken goods that she had not paid for. The customer and the Frankfort employee discussed whether she had taken anything while the customer filmed the incident with her cell phone, and the customer left after becoming loud and antagonistic toward the Frankfort employee. Basit reviewed security footage and saw a female customer arguing with a Frankfort employee while holding up her cell phone as if to record the incident. Basit found the incident to be strange but thought little of it.

¶ 11    Basit stated that often only one employee is working at the convenience store, and that the employee is responsible for assisting customers and monitoring activities within the store. If an employee suspects that a theft is occurring or has occurred, the employee is expected to contact the police. Basit stated that he spoke with Ron, and contrary to petitioner's allegations, Ron denied calling the police. Basit denied that Novy acted at the behest of Ron and stated that Ron was the only employee on duty.

¶ 12    In rebuttal, petitioner conceded that she had no knowledge as to whether Novy was respondent's employee, but that Novy was wearing a uniform similar to that of a security guard. Although neither Novy nor Ron engaged in any insults, slurs, or ridicule against her race or sex, she was the only black person and only female in the store when she was accused of theft. Petitioner also conceded that she received respondent's goods or services prior to December 14, 2014, including when Ron was working. She successfully purchased gasoline on December 14, 2014, and she knew of no other customers who were accused of stealing.

¶ 13    In its analysis, the Department found no evidence that respondent denied petitioner the full and equal enjoyment of its facility and services because of her race or her sex. Moreover, there was no evidence that a similarly situated, non-black or male individual was treated more favorably than petitioner under similar circumstances. The report concluded that even accepting petitioner's allegation that Ron accused her of stealing and asked Novy and a police officer to investigate, there was no evidence that Ron did so based on a racial or gender-based animus. The report further noted that it was uncontested that petitioner was not prevented from entering the store and was not barred from purchasing gasoline. The report concluded that it did "not stand to reason" the respondent and its employee would serve petitioner on many occasions and then stop because of a

sudden animus against black or female individuals. Even if Ron accused petitioner of stealing, which respondent denied, the mere fact that Ron was neither black nor female was not enough to show animus when petitioner did not allege that respondent engaged in any slur, insult, or ridicule in which her race was referenced. Based on the foregoing, the Department recommended a finding of lack of substantial evidence.

¶ 14 Petitioner filed a timely *pro se* request for review by the Commission alleging, in relevant part, that respondent had not submitted "any relevant evidence" or footage from surveillance cameras. In her handwritten statement in support, petitioner argued, *inter alia*, that the surveillance footage would show "exactly" what she said happened and that respondent did not submit "one piece of evidence." Petitioner also noted inconsistencies in the investigation summary, stated that she never filmed anything on her phone, and asserted that respondent denied that police were called when in fact the police were called.

¶ 15 The Department filed a response stating that the evidence indicated that petitioner was not denied access to the store or the ability to purchase fuel. Rather, taking petitioner's account as true, she was stopped and questioned by a security or law enforcement official to determine whether, based upon the clerk's suspicion, she took a hat without paying for it. The Department further noted that although petitioner argued that these actions were motivated by race and sex because she was the only black woman present, she provided no evidence that respondent treated a non-black or male customer more favorably than a black female customer. Moreover, the Department submitted that even if petitioner could establish a *prima facie* case of discrimination, respondent had a legitimate, non-discriminatory reason for its actions, that is, an interest in preventing theft.

¶ 16    On February 27, 2019, the Commission issued a final order sustaining the Department's dismissal of petitioner's charge due to a lack of substantial evidence. The Commission found no evidence that petitioner was denied full enjoyment of respondent's facilities. Although petitioner was "troubled and offended after being accused of stealing," she was still able to complete her purchase. Thus, even if respondent's actions were unreasonable, there was a lack of evidence that the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq*. (West 2014)) had been violated.

¶ 17    On appeal, petitioner asks this court to order respondent to submit surveillance footage to "show the truth" of her allegations and provide her with a written apology.

¶ 18    As a preliminary matter, we note that our review of petitioner's appeal is hindered by her failure to fully comply with Supreme Court Rule 341 (eff. May 25, 2018), which "governs the form and content of appellate briefs." *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. Although petitioner is a *pro se* litigant, this status does not lessen her burden on appeal. "In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. Supreme Court Rule 341(h) provides that an appellant's brief should contain a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment," and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(6), (7) (eff. May 25, 2018). Pursuant to the rule, a reviewing court is entitled to have issues clearly defined with "cohesive arguments" presented and pertinent authority cited. *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993).

¶ 19    Although petitioner used in part a form approved by the Illinois Supreme Court when filing her brief, she has failed to articulate a legal argument which would allow a meaningful review of her claims and provides no citations to the record. An appellant is required to cite to the pages and volumes of the record on appeal upon which she relies "so that we are able to assess whether the facts which [the appellant] presents are accurate and a fair portrayal of the events in this case." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 58; see also Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Here, petitioner's opening and reply briefs are narratives of the case from her perspective and discuss matters outside the record. Moreover, petitioner cites no legal authority to support her arguments on appeal. See *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991) ("A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research."). "Arguments that do not comply with Rule 341(h)(7) do not merit consideration on appeal and may be rejected by this court for that reason alone." *Wells Fargo Bank, N.A. v. Sanders*, 2015 IL App (1st) 141272, ¶ 43.

¶ 20    Considering the content of petitioner's brief, it would be within our discretion to dismiss the instant appeal. See *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005) ("Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal."). However, because the issues in this case are simple, petitioner made an effort to present her appeal by use of the approved form brief, and we have the benefit of a cogent appellee's brief, we decline to dismiss this appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc*., 321 Ill. App. 3d 509, 511 (2001).

¶ 21    That said, the deficiencies in the record still prevent us from reaching this appeal on the merits. Here, petitioner asks this court to order respondent to produce surveillance footage, which she argues will support her version of events. Initially, we note that although Basit stated that he reviewed certain surveillance footage, there was no indication that this footage was preserved. Moreover, the record does not show that the Department investigator viewed such footage. "When reviewing the decision of an administrative agency, we are limited to reviewing the record which was before the agency and may not consider new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency." *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 185 (2000). Thus, even if such footage existed, we cannot consider it, as it was not before either the Department or the Commission.

¶ 22    Additionally, petitioner asks this court to order respondent to make a written apology. However, she cites no authority for the proposition that this court can *sua sponte* order a party to make a written apology. "Arguments unsupported by citation to legal authority are considered forfeited on appeal." *Grant v. Dimas*, 2019 IL App (1st) 180799, ¶ 34. Because petitioner cites no authority to support her argument, it is forfeited.

¶ 23    For the foregoing reasons, we affirm the judgment of the Commission.

¶ 24    Affirmed.